## Commonwealth *v.* Howell, Appellant.

Argued December 13, 1967. Before WATKINS, MONT-GOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (ERVIN, P. J., and WRIGHT, J., absent).

*Bennett Weinstock,* Assistant Defender, with him *William E. McDaniels* and *Melvin Dildine,* Assistant Defenders, and *Herman I. Pollock,* Defender, for appellant.

*Alan J. Davis,* Assistant District Attorney, with him *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Watkins, J., September 12, 1968:

This is an appeal nunc pro tunc by Walter Howell, the defendant-appellant, from the judgment of sentence of the Court of Quarter Sessions of Philadelphia County.

He was indicted for burglary of a motor vehicle. A pretrial motion to suppress the evidence was heard and denied. He was tried before the Hon. Maurice W. Sporkin, without a jury, and found guilty. He was sentenced to a term of two to five years. No post-trial motions had been filed and this Court on August 11, 1966, on appeal, remanded the case for a hearing. The hearing was held, sentence vacated, and post-trial motions nunc pro tunc permitted. These motions were argued and denied at which time a sentence of sixteen months to five years was imposed. This appeal followed.

The question raised by this appeal falls into the category of "stop and frisk" cases which have been giving the courts constitutional jitters. The law as to the extent to which police may act to prevent and detect crime on the city streets, without coming into conflict with the constitutional protection of the rights of individuals is in utter confusion. Mr. Chief Justice Warren in the recent case of *Sibron v. New York,* 392 U.S. 40, 50, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968), said at page 932: "The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case."

The facts in the instant case are as follows: A uniformed police officer stopped appellant on March 13, 1966, at 5:40 p.m., and asked him what he had under a raincoat or topcoat that he was carrying. He was also wearing a topcoat. Appellant answered: "I have a tape recorder under there". The officer asked him

to identify himself and he took a wallet from his pocket and gave the officer a driver's license. This license bore the name of Robert Rosenfeld, who was described by the license as male, white and 47 years of age. Since appellant was a negro and seemed much younger than 47 (he was, in fact, 35), it was apparent that he was not Robert Rosenfeld. The officer then took him into custody and drove him to the police station.

The real Rosenfeld was in the station when the officer arrived with the appellant. Rosenfeld had parked his automobile about 3:00 o'clock p.m., on Spruce Street about three blocks from where the officer stopped the appellant. On returning to his car at about 7:00 p.m., he found his car had been broken into and his black raincoat, portable tape recorder and wallet were missing. He went to the police station to report the crime and while there the officer brought in the appellant and the stolen articles which Rosenfeld identified.

At the time the officer saw the appellant he was wearing one topcoat and carrying another and according to the officer seemed to be attempting to hide something under the coat he carried. In the officer's opinion he was acting so suspiciously that he accosted him. At this time the officer had no knowledge of the specific offense actually committed nor of any similar law violation in the vicinity. He had no warrant for the arrest of the appellant. He had not seen appellant do anything illegal prior to approaching him.

In *Com. v. Hicks,* 209 Pa. Superior Ct. 1, 223 A. 2d 873 (1966) (in which an allocatur was granted), this Court said at pages 5, 6: "We take it as well settled that there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest, for the purpose of limited inquiry in the course of police investigation. . . . It is

the business of the police to prevent crime and the prompt inquiry into suspicious or unusual street action is an indispensable police power. Police prearrest and detention is based on the reasonable suspicion that the defendant committed a crime, as distinguished from reasonable cause to believe or probable cause. . . . it is the reasonableness of the officer's suspicion that is determinative, as measured against the place, time and events of the moment." As the Commonwealth points out:

"It is important to note that all the officer did when he saw appellant appearing to be hiding something under the raincoat he held on his arm was to approach him and ask him what he had! At this point there was no detention, no frisk, and no search. There is no indication that appellant considered himself in custody, that he was not free to leave, or that he did not respond voluntarily.

"The officer could plainly have approached appellant and put questions to him without any suspicion whatsoever.

"In this instance, the combined fact of appellant wearing one raincoat and carrying another, with something apparently concealed under the second, and with appellant further attempting to hide it on seeing the officer approach, would beyond any question warrant the mere questioning of appellant by the officer.

"In his dissenting opinion in Hicks, supra, Judge HOFFMAN begins by saying, 'I agree with the majority that a police officer may stop a person on the streets for brief questioning, if he "reasonably suspects" that that person has committed a felony.'

"Even applying Judge HOFFMAN's formulation, the conduct of appellant in attempting to conceal from the officer's view what was under the raincoat would support the reasonable suspicion either that it was not

his and was therefore stolen, or that it was something the possession of which would of itself be a crime."

The Supreme Court of the United States has discussed the problem at length in recent decisions. *Sibron v. New York*, supra; *Peters v. New York*, 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968); and *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1886 (1968). The facts in the *Sibron* case are as follows: The defendant was convicted of the unlawful possession of heroin. A motion to suppress had been denied. The police officer had testified that while he was patrolling his beat he saw the defendant in conversation with a number of persons who he knew to be narcotic addicts. He did not overhear any conversation. The officer approached the defendant stating: "You know what I'm after", and thrust his hand into the defendant's pocket getting several packets of heroin. The Supreme Court held that the heroin was inadmissible against him saying, at page 934: "Nothing resembling probable cause existed until after the search had turned up the envelopes of heroin." Chief Justice WARREN said further, at page 935: "The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."

The very recitation of the facts in this case so well distinguishes it from the facts in the instant case that it requires no further discussion.

In the *Peters* case, supra, the appellant was convicted of possessing burglary tools under circumstances evincing an intent to employ them in the commission

of a crime. The tools were seized from his person at the time of his arrest and his pretrial motion to suppress the evidence was denied. The policeman in this case testified that he just finished taking a shower when he heard a noise at his apartment door. He looked through the peephole of the door and saw "two men tiptoeing out of the alcove toward the stairway". He had lived in this apartment building for twelve years and did not recognize either one of them as tenants. He believed, therefore, that he had happened upon the two men in the course of an attempted burglary. He opened his door, entered the hallway and slammed the door loudly behind him. The two men fled down the steps and the officer gave chase. He apprehended Peters between the fourth and fifth floors. The officer patted Peters down for weapons and found a hard object which turned out to be burglar tools.

The Court in this case said, at page 936: "We think, however, that for purposes of the Fourth Amendment the search was properly incident to a lawful arrest". The Court reasoned that since the officer caught up with him after a chase he had probable cause to arrest him for attempted burglary.

In the *Terry* case, supra, the defendant was convicted of carrying a concealed weapon. The officer testified that while he was patrolling in plain clothes his attention was attracted to two men. He had never seen them before and was unable to explain what drew his attention except his routine habit of observation. He watched them walking back and forth and looking into the same store window on a dozen trips. This made him suspicious that the men were planning "a stickup" and he feared "they may have a gun". He approached the men, identified himself, and asked their names. He received a mumbled reply. He had no information concerning the men nor was he ac-

quainted with them. He grabbed the defendant and patted down his clothing and found a pistol. The court below refused to suppress. They refused not on the theory that the gun was seized following a search incident to a lawful arrest but on the ground that on the basis of the officer's experience he "had reasonable cause to believe that the defendants were conducting themselves suspiciously and some interrogation should be made of their actions". For his own protection he had a right to frisk men whom he had reasonable cause to believe might be armed. The Supreme Court held, at page 911: "We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous; where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries; and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken."

We like the approach of Mr. Justice WHITE to the exclusionary rule where, in a concurring opinion in the *Terry* case, he said at page 913: "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and

go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation. In my view, it is temporary detention, warranted by the circumstances, which chiefly justifies the protective frisk for weapons. Perhaps the frisk itself, where proper, will have beneficial results whether questions are asked or not. If weapons are found, an arrest will follow. If none are found, the frisk may nevertheless serve preventive ends because of its unmistakable message that suspicion has been aroused. But if the investigative stop is sustainable at all, constitutional rights are not necessarily violated if pertinent questions are asked and the person is restrained briefly in the process."

In the instant case, at the stage where the appellant handed the driver's license to the officer, he had not been arrested, had not been searched and had not been frisked. It seems certain that he was representing himself to be Robert Rosenfeld even to the point that he claimed to be white in order to fit the license description.

The officer now had knowledge of the appellant's possession of the second coat, a tape recorder that he had attempted to hide under the coat and a wallet from which he had taken a license that was patently not his. The officer at this point had probable cause not only to investigate further but to place the appellant under arrest with the very reasonable belief that the appellant's possession indicated, at the least, receiving stolen goods.

Judgment of sentence affirmed.