Commonwealth, Appellant, *v.* Hayes et al.

Argued June 13, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James Garrett*, Assistant District Attorney, with him *Mark Sendrow* and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellant.

*Harry R. Seay*, submitted a brief for appellee, Westley Hayes.

*Andrea Commaker Levin*, Assistant Defender, with her *John W. Packel*, Assistant Defender, and *Benjamin Lerner*, Defender, for appellee, David Green.

OPINION BY VAN DER VOORT, J., December 1, 1975:

On August 1, 1974, at approximately 1:30 p.m., John Walsh, a sergeant with the Philadelphia Police Department, was cruising in an unmarked patrol car when he observed two men, appellees Westley Hayes and David Green, sitting in a green and black Mustang, parked in front of an apartment building in an area in which there had recently been a number of burglaries. Since the automobile in which the men were sitting matched the description of a car which the police suspected had been

used in one or more of the burglaries, Sergeant Walsh parked his car and watched the two men. After a wait of three to five minutes, Sergeant Walsh observed the two men leave the car, ascend the steps to the apartment building and disappear from view. When the two men reappeared, they were carrying two white boxes and a portable typewriter, which they placed on the rear seat of their car. The men then entered the building a second time and emerged carrying a large television set, which they placed in the trunk of the car. At that point, Sergeant Walsh approached the men, identified himself, and asked if either of the two men lived in the apartment building; when both men replied in the negative, the sergeant called for assistance. When a backup car arrived, Sergeant Walsh instructed the police officers to detain appellees until he could check inside the apartment building. A search of the third floor of the building disclosed an apartment which had obviously been burglarized. The sergeant then instructed his men to take the two suspects into custody and to call for a police wagon. David Green and Westley Hayes were charged with criminal conspiracy and burglary. At a suppression hearing held on January 28, 1975, the lower court granted appellees' motions to suppress physical evidence and all statements made by appellees, and the Commonwealth appealed the grant of the suppression motions.

The Commonwealth argues that the initial brief detention of appellees was reasonable under the circumstances, and that the subsequent arrest of appellees and seizure of the stolen property were pursuant to a lawful arrest based on probable cause. In *Adams v. Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972), the Supreme Court approved the procedure whereby a police officer might detain an individual for a short period of time if the officer suspected that the individual had engaged or was presently engaging in criminal activity, notwithstanding the fact that his suspicion did not rise to

probable cause to arrest that individual. The Court there stated (407 U. S. 143, at 145-46) : "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry [v. Ohio, 392 U.S. 1] recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." After the initial stop, however, a police officer must have probable cause before making an actual arrest. *Commonwealth v. Ellis*, 233 Pa. Superior Ct. 169, 335 A.2d 512 (1975). Whether a police officer has probable cause to arrest depends upon whether at the time of the arrest the facts and circumstances within the knowledge of the officer, or of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing a crime. *Beck v. Ohio*, 379 U. S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964) ; *Commonwealth v. Murray*, 437 Pa. 326, 329, 263 A.2d 886 (1970) ; *Commonwealth v. Tookes*, 236 Pa. Superior Ct. 386, 344 A.2d 576 (1975). Of course, if appellees in the case before us were lawfully arrested, then evidence obtained as the fruit of such lawful arrest would be admissible against appellees. *Henry v. U. S.*, 361 U.S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959) ; *Commonwealth v. Tookes, supra.*

Appellees refer us to *Commonwealth v. Mackie*, 456 Pa. 372, 320 A.2d 842 (1974), as support for their argument that the lower court properly suppressed the stolen articles and certain statements made by them to the police, as fruit of an arrest not based on probable cause. In *Mackie*, a police officer stopped an individual who was

walking along a street carrying a portable television and a pair of field glasses. When the individual gave a story that "didn't seem right," the police officer arrested the man. On appeal, our Supreme Court reversed the conviction, stating that the officer might have been justified in stopping the man to determine his identity or maintain the status quo momentarily, but holding that the facts and circumstances known to the arresting officer did not justify the belief that the person had committed or was committing a crime. We find that the fact situation of the case before us is more similar to the fact situations of *Commonwealth v. DeFleminque,* 450 Pa. 163, 299 A.2d 246 (1973), and *Commonwealth v. Ellis, supra,* than to the fact situation of *Mackie.* In *DeFleminque,* the arresting officer came upon two individuals loading the trunk of a car in front of a school at 3:20 a.m. The circumstances were held sufficient to justify an inquiry by the officer, and the unsatisfactory explanation given by the two men gave rise to probable cause for an arrest. In *Ellis,* an individual was stopped on the street at 2:00 a.m., while carrying what appeared to the police officer to be an adding machine (but what actually turned out to be a check-writing machine). The individual attempted to conceal the device, and, after being advised of his *Miranda* rights, gave contradictory explanations of his conduct. Such conduct was also held to be sufficient to sustain the arrest. In the case before us, a police officer observed two men in a high-crime area get out of an automobile which matched in make, model, and color a car suspected of having been used in recent burglaries in the same area. The officer watched the men make two trips to an apartment building and remove two boxes, a portable typewriter, and a large television set from the building. Such conduct certainly was suspicious enough to justify a brief detention of the individuals and an investigation of the situation. When the police officer's investigation disclosed that a burglary had occurred and

that appellees were very likely the perpetrators of the burglary, probable cause then existed for an arrest.

The Fourth Amendment was designed, not to handicap our police in the proper execution of their duties, but rather to protect the right of all citizens to be free from *unreasonable* intrusions into their lawful activities. Were we to sustain the action of the lower court in this case, we would be penalizing the police for exemplary investigative work. We find no violation of appellees' Fourth Amendment rights, and we therefore reverse the action of the lower court granting appellees' motions to suppress evidence.

CONCURRING OPINION BY SPAETH, J.:

The majority opinion relies upon *Adams v. Williams*, 407 U.S. 143 (1972) to justify the momentary detention of appellee during which Sergeant Walsh discovered the burglarized apartment. (Majority opinion, at 512.) I agree that the lower court erred in granting appellees' motions to suppress, but do not base my agreement upon that decision. *See Adams, supra* at 151-162 (BRENNAN, J. and MARSHALL, J., dissenting). I would simply rely upon *Terry v. Ohio*, 392 U.S. 1 (1968) to justify the police stop of appellees.

Appellees were observed leaving an automobile which the police already suspected had been employed in prior burglaries in the same area. Sergeant Walsh then personally observed appellees emerge from the apartment building carrying articles which are often the fruits of burglary. In response to the officer's question, appellees stated that they did not live in the building. Manifestly, the police acted perfectly properly in making a *Terry* stop at this point.