382 A.2d 127

**COMMONWEALTH of Pennsylvania**

v.

**John LeSEUER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 22, 1976.

Decided Dec. 28, 1977.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, Trial Division, by the defendant-appellant, John LeSeuer, after conviction in a non-jury trial on charges of burglary and criminal conspiracy.

Pre-trial motions to suppress were denied as to physical evidence, but granted as to certain statements. He was sentenced to five years probation on the burglary charge and sentence was suspended on the conspiracy charge.

Officer Machel of the Philadelphia Police Department and his partner observed the appellant and another man carrying five pieces of stereo equipment on South 50th Street. As the two men passed the officers' patrol wagon, an unidentified elderly man waved the wagon down and stated that the men in question had just come running out of a house carrying the equipment.

When the police stopped the men for questioning, the appellant stated he was coming from a "hock" shop where he had been unable to "hock" the equipment because of the lack of a turntable needle. Officer Machel's partner examined the turntable and found it had a needle. The appellant was taken into custody, but because there was no report of a burglary in the neighborhood, he was released and given a property receipt for the equipment. The next morning the police learned that the equipment had been claimed by a burglary victim. The appellant was then rearrested.

The appellant contends that his arrest and the seizure of the equipment were without probable cause and were therefore illegal. The facts disclose that the police officers observed the appellant carrying expensive stereo

equipment in a high crime area. A disinterested observer informed the police that the appellant had been seen running out of a house carrying the material. This would not be sufficient to arrest the appellant. However, "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889] recognizes that it may be the essence of good police work to adopt an intermediate response." *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

The officers "stop and search" of the defendant in this case was a valid intermediate response. When defendant's explanation was patently untruthful, there was then probable cause to take him into custody and seize the suspected property. As stated by Judge Van der Voort in *Commonwealth v. Hayes,* 237 Pa.Super. 510, 513, 352 A.2d 121, 122 (1975):

> "Whether a police officer has probable cause to arrest depends upon whether at the time of the arrest the facts and circumstances within the knowledge of the officer, or of which he has reasonable trustworthy information are sufficient to warrant a man of reasonable caution in believing the suspect has committed or is committing a crime."

Under the factual circumstances of this case, a man of reasonable caution would suspect criminal activity was afoot. The instant case is unlike the situation in *Commonwealth v. Mackie,* 456 Pa. 372, 320 A.2d 842 (1974), on which the appellant relies. There, the only reason for arrest was the officer's feeling that "something didn't seem right".

In the instant case, the officer was informed that appellant was seen running from a house with five pieces of expensive electronic equipment and he received from appellant a demonstrably false explanation as to appellant's pos-

session of the equipment. This, coupled with the totality of the circumstances gave the officer reason to believe that criminal activity was afoot and his response thereto was a reasonable one.

Judgment of sentence affirmed.

HOFFMAN, J., files a dissenting opinion.

SPAETH, J., files a dissenting opinion in which CERCONE, J., joins.

HOFFMAN, Judge, dissenting:

Appellant contends that the lower court should have granted his motion to suppress physical evidence seized as the result of his arrest because the arresting officers lacked probable cause. I agree and, therefore, would vacate the judgment of sentence and remand for a new trial.

The Commonwealth produced the following facts:[1] During the afternoon of October 24, 1975, police officers observed appellant and another person[2] walking along North 50th Street in Philadelphia carrying five pieces of stereo equipment. After an unidentified citizen told the officers that appellant and his companion had just run out of a house on North 50th Street, the officers stopped and frisked them. In response to the officers' inquiry, appellant stated that he was coming from a pawn shop where he had been unsuccessful in his attempt to exchange the equipment for money because the turntable lacked a needle. When the officers saw that there was a needle in the turntable, they confiscated the equipment and took appellant into custody. Because records revealed that no burglaries had been reported, the police released appellant. Later the same day, the owner of the stereo equipment reported a burglary and claimed the equipment which had been retained by the police. The next

1. The Commonwealth incorporated the testimony adduced at the suppression hearing into its case in chief at trial.

2. Appellant's companion was not a codefendant in this case.

morning, the police arrested appellant and charged him with burglary.[3]

On January 16, 1976, the lower court denied appellant's motion to suppress the stereo equipment and granted the motion as to appellant's response to the officers' inquiry because the officers had not given appellant his *Miranda* warnings. On the same day, after a trial without a jury, the lower court found appellant guilty of burglary and later sentenced him to five years probation on the condition that he enter the Philadelphia Psychiatric Center Drug Program. This appeal followed.

Appellant asserts that his warrantless arrest was illegal because it was not based on probable cause and that the subsequent use of the confiscated stereo equipment against him was improper as it was the fruit of the illegal arrest. Because "street encounters between citizens and police officers are incredibly rich in diversity," *Terry v. Ohio,* 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968), each case must be reviewed under its own unique facts and circumstances. Amidst this diversity, there is one unchanging requirement: probable cause must be determined on the facts and circumstances known at the moment the arrest was made, not retrospectively at trial. *Adams v. Williams,* 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The inquiry in the instant case is whether, at the time the police detained appellant and confiscated the stereo equipment,[4]

3. The Crimes Code, Act of December 6, 1972, P.L.1482, No. 334, § 1; 18 Pa.C.S. § 3502.

4. The lower court erred when it construed appellant's detention for questioning and subsequent release as a kind of intermediate police response requiring something less than probable cause in order to be lawful. The Pennsylvania Supreme Court has stated that an arrest can be characterized as "any act that . . . subjects him to the actual control and will of the person making the arrest." *Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 311 (1963). In the instant case, there can be no question that when the police took appellant into custody, they subjected him to their actual control. Thus, appellant was under arrest at the time of his detention at the police station.

the arresting officers possessed reasonably trustworthy information which would be sufficient to warrant a prudent person in believing that appellant had committed or was committing an offense. *Adams v. Williams,* supra at 148, 92 S.Ct. 1921; *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142; *Bertrand Appeal,* 451 Pa. 381, 385, 303 A.2d 486, 488 (1973).

In the instant case, there were two sources of information upon which the officers might have concluded that there was probable cause to arrest appellant. First, the officers received a statement from an unidentified private citizen that appellant and another person had just run out of a house.[5] Even assuming that the citizen accurately reported his observation, the statement was not the report of a felony or misdemeanor. At most, the statement that appellant ran out of a house could raise a good faith suspicion of unlawful activity which may have justified "[a] brief stop" of the citizen "in order to determine [his] identity or to maintain the status quo momentarily . . . ." *Adams v. Williams,* supra, 407 U.S. at 146, 92 S.Ct. at 1923. However, suspicion or even strong reason to suspect is not adequate to support an arrest. Therefore, the information volunteered by the private citizen could not furnish probable cause for an arrest.

Second, in response to the officers' request for an explanation as to why appellant was carrying the equipment, appellant responded that he was returning from a pawn shop where he had been turned away in his efforts to exchange the equipment for cash because the turntable lacked a needle. The officers observed that the turntable was equipped with a needle. The Pennsylvania Supreme Court

---

**5.** Our Court has stated that information furnished by private citizens "should be considered at least as reliable as information received from a regular anonymous police informer." *Commonwealth v. Cosby,* 234 Pa.Super. 1, 7, 335 A.2d 531, 534 (1975); *Commonwealth v. Kline,* 234 Pa.Super. 12, 15–17, 335 A.2d 361, 363 (1975). *See also Commonwealth v. Heyward,* 248 Pa.Super. 465, 375 A.2d 191 (1977).

decision in *Commonwealth v. Mackie*, 456 Pa. 372, 320 A.2d 842 (1974) is helpful in determining whether such a response can furnish probable cause to arrest. In *Mackie*, the arresting officer saw the defendant walking in a high crime area during daylight hours with a portable television and a set of field glasses. The officer stopped the defendant and asked where he was going. When the defendant gave a suspicious response,[6] the officer arrested him. The Supreme Court, in overturning the conviction, stated that in order for a defendant's response to furnish probable cause, it must be "bizarre and totally incredible under all the facts and circumstances." *Commonwealth v. Mackie*, supra 456 Pa. at 376, 320 A.2d at 844.

In *Commonwealth v. DeFleminque*, 450 Pa. 163, 299 A.2d 246 (1973), our Supreme Court affirmed the trial court's denial of the defendant's suppression motion and characterized the defendant's response to police questioning as "totally incredible". The police had observed the defendant coming from behind a school building at 3:20 a. m. carrying a carton containing items associated with school activities. In response to the officers' inquiry, the defendant stated that "he had left the car to go behind the school to urinate and had taken the materials found in the trunk of the car with him because he did not wish to leave them in the car while he relieved himself. The officers went to the rear of the school building, but could observe nothing unusual." *Com-*

---

**6.** "The officer testified: 'I asked him—I asked the defendant where was he going. The defendant told me he was going home. I asked him where did he live at. He told me in the [3100] block of Bancroft. I asked the defendant where he was coming from. He told me 3800 North 18th Street. I asked where did he get the t.v. from. He told me him and his girl friend had an argument. He took the t.v. back. So I told him it was unusual for him to be coming from 3800 North 18th Street all the way to Broad and Erie and Bancroft Street is only seven blocks away. The defendant told me that he was looking for a cab and there was no cab that passed him on the way. So I asked the defendant did he have any money to catch a cab. He said no, he was going home, let the cab take him home and pay the cab when he got home. So the story didn't seem right. So I took the defendant in for investigation.'" *Commonwealth v. Mackie*, supra 456 Pa. at 374, 320 A.2d at 843.

*monwealth v. DeFleminque,* supra 450 Pa. at 164, 299 A.2d at 247. *See also Commonwealth v. Browne,* 221 Pa.Super. 368, 292 A.2d 487 (1972); *Commonwealth v. Howell,* 213 Pa.Super. 33, 245 A.2d 680 (1968).

In the instant case, while appellant's explanation, again, might have aroused suspicion because of its apparent contradiction with the fact that the turntable had a needle, the response cannot be construed as "bizarre and totally incredible." At most, a brief stop would have been appropriate to investigate the suspicious circumstances.[7]

Because the foregoing sources of information, individually and collectively, did not furnish probable cause to arrest appellant, I conclude that the owner's identification of the stereo equipment was the fruit of the illegal arrest. Therefore, this physical evidence should have been suppressed and its use during trial was reversible error. *Wong Sun v. U. S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Mackie,* supra 456 Pa. at 377, 320 A.2d at 844.

I would vacate the judgment of sentence and remand for a new trial.

SPAETH, Judge, dissenting:

As a rule, constitutional cases try to steer a course between conflicting demands, and that is true of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). We want the police to be able to do what they need to do to catch criminals; but we also want them to treat people with respect. The police won't be able to meet these demands if they must choose between arrest or release; wanting to do their job, they'll choose arrest, and never mind if that means driving off to the station house someone

---

7. Appellant also contends that the Commonwealth could not use the suppressed statement to demonstrate that the police had probable cause to arrest him. Even assuming, as I have done, that the Commonwealth could properly use the statement for such a purpose. I conclude that there was no probable cause to arrest.

who has done nothing wrong. Therefore, the police should have a third choice: they should be able to detain a person long enough to ask a few questions, the answers to which will help them decide whether to arrest or release.

Here, the police did not take their third choice; they simply made an arrest, and I agree with Judge HOFFMAN that they did not know enough to do that.

There was no need for the police to act as they did. They could have said, "But the stereo *has* a needle in it," and seen how appellant resolved that contradiction. Or they could have asked, "Which pawnshop?", and if appellant named one, called the pawn broker. Or they could have said, "Someone saw you run out of a house with this stereo," and awaited appellant's explanation. Or they could have radioed headquarters to learn whether a burglary had been reported. In other words, the police were only a few questions and a few minutes away from learning enough to be able to decide, either to release appellant because he had explained his conduct, or to arrest him because the questions asked him had elicited a story "bizarre and totally incredible . . . under all the facts and circumstances." *Commonwealth v. Mackie*, 456 Pa. 372, 376, 320 A.2d 842, 844 (1974).* Instead of taking that little trouble, the police drove appellant off to the station house—just the response that *Terry* and *Adams* make unnecessary, and preclude.

The judgment of sentence should be vacated and the case remanded for new trial.

CERCONE, J., joins in this opinion.

* I recognize that at some point during such an encounter the preliminary inquiries may stop and a "focused" investigation may begin that will require the warnings set out in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).