375 A.2d 129

**COMMONWEALTH of Pennsylvania**

v.

**Anthony Wayne HARPER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 22, 1976.

Decided June 29, 1977.

Albert J. Cepparullo, Assistant Public Defender, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

If Larry Jackson had foreseen the ordeal that awaited him, it is safe to assume that he would not have ventured forth into the night of October 14, 1974. At 11:30 p. m. on that night, Mr. Jackson boarded a west-bound trolley at Thirty-seventh Street and Lancaster Avenue in Philadelphia. He assumed a seat in the relatively empty rear of the vehicle. At Forty-second Street, three black males boarded the trolley and took the seats immediately in front of and beside Mr. Jackson. While en route, one of the men, later identified as Henry Wyatt, turned to Mr. Jackson and asked his destination. Mr. Jackson replied that he would deboard at Fifty-second Street. When asked his destination by Mr. Jackson, Henry Wyatt replied, "That's cool." Mr. Jackson had never seen any of the three men before.

Just before the trolley reached Fifty-second Street, two of the men began an unprovoked and savage knife attack on Mr. Jackson, stabbing him eleven times in the chest, arms, hands, and leg. As a result of this attack, emergency surgery lasting five hours was necessary to save Mr. Jackson's life. He lost five pints of blood and sustained severe nerve damage to his hands and arms. Mr. Jackson was able to leave the hospital after seven weeks.

When the trolley reached Fifty-second Street, the three culprits fled. The other passengers also ran from the trolley, and their screams attracted the attention of Philadelphia Police Officer Frederick Hoesle, who quickly summoned backup and emergency vehicles. Officer Hoesle learned from the passengers that the three men had boarded a bus

across the street. When reinforcements arrived, Officer Hoesle boarded the bus and discovered six black men between the ages of eighteen and twenty-five. These men, along with one from the street, were taken to the hospital, and less than one hour after the attack had occurred, were paraded individually before Mr. Jackson. Mr. Jackson identified appellant and Henry Wyatt as two of the attackers.[1]

■ Appellant contends that the hospital identification should have been suppressed because it was unduly suggestive. However, there is no evidence of undue suggestiveness in this case. The severity of Jackson's wounds and the amount of blood he had lost convinced the police officers that an immediate identification was necessary. Certainly, it was reasonable of the police to obtain the identification before Mr. Jackson was rushed to surgery. Furthermore, appellant was given the advantage of an impromptu line-up. Thus, the procedure in this case cannot be characterized as a one-on-one confrontation occurring after "the eyewitness knows of a prior police judgment that the confronted citizen is the person who committed the crime." *Commonwealth v. Hall,* 456 Pa. 243, 250, 317 A.2d 891, 894 (1974).

■ Appellant also contends that the identification was inadmissible because it was the fruit of an illegal arrest. However, no illegal arrest occurred in this case. Officer Hoesle had probable cause to believe that the perpetrators of a vicious attack were on the bus. Therefore, he was justified in momentarily detaining all persons who reasonably fitted the description of the attackers until an identification could be made. *Commonwealth v. Hall, supra; Commonwealth v. Ray,* 455 Pa. 43, 315 A.2d 634 (1974). Once the victim identified appellant, probable cause for the arrest existed.

Further comment is demanded by the unusual facts of this case. The lawfulness of the identification and the arrest procedure in this case are significantly dependent on the

1. Henry Wyatt's conviction was affirmed by this court in a per curiam order. *Commonwealth v. Wyatt,* 242 Pa.Super. 628, 360 A.2d 665 (1976). The identity of the third participant in the attack is unknown.

reasonableness of the police conduct. In appellant's first argument, he contends that the identification procedure was unduly suggestive, and that the confrontation should have been delayed until a formal line-up could be arranged. In his second argument, he contends that the arrest was illegal because seven possibly innocent men were detained.

The heinous nature of the crime and the small number of suspects made the conduct of the police very reasonable. Appellant's observation that innocent men were being detained was a factor necessitating and justifying a prompt identification procedure. Normally, in determining the need for prompt identification, a police officer must weigh the inherent accuracy and reliability of prompt identifications against the safeguards provided by counselled, formal line-ups. This court has discussed the balance between these alternatives on many occasions. *See, e. g., Commonwealth v. Jenkins,* 232 Pa.Super. 523, 335 A.2d 463 (1975); *Commonwealth v. Santiago,* 229 Pa.Super. 74, 323 A.2d 826 (1974). In this case, thrown into the balance was the officer's knowledge that at least four completely innocent men were being detained from continuing their daily lives. Thus, the police officers in this case acted not only reasonably; they acted with commendable skill and efficiency.

The judgment of sentence of the lower court is affirmed.

HOFFMAN and SPAETH, JJ., concur in the result.