413 A.2d 390

**COMMONWEALTH of Pennsylvania**

v.

**Andre LOVETTE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 1978.

Filed Aug. 24, 1979.

Petition for Allowance of Appeal Granted Dec. 18, 1979.

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Leonard Sosnov, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, President Judge:

Appellant was convicted of burglary, theft and receiving stolen property and sentenced to four to twenty-three months imprisonment. Appellant seeks in the alternative that his judgment of sentence be arrested or that he be granted a new trial.

Appellant's first argument is that his arrest was constitutionally infirm because the police lacked probable cause to arrest him. Based upon the facts known at the time of arrest, we disagree. The arresting officer testified that on December 15, 1976 at 3:15 P.M. he received a radio dispatch to investigate males with stolen property in a deserted house. When the officers arrived they found stereos, Christmas gifts, clothing, pottery and other property stored in the vacant building. Across the driveway from the empty house, the police saw a broken rear door to a house which they discovered had been burglarized. The owner of the burglarized house later identified the goods found in the abandoned house as being stolen from his house. In transporting the stolen property to the deserted house, the burglars crossed a rain-soaked backyard and left muddy trails of footprints between the two houses. Shortly after the owner of the burglarized house arrived and identified his property, Officer McCoy began to patrol the area. Approximately one and one-half blocks from the crime, the officer

observed three males standing on the corner with mud and dirt on their shoes. Appellant was holding a brown paper bag in his hand. The officer approached and requested identification, but the men did not identify themselves. When asked how his shoes had become muddy, appellant hesitated and replied that he had probably walked through dirt or a field in the course of a day. The officer thought the answer evasive. When Officer McCoy inquired into the contents of the paper bag, appellant showed the officer a camel-hair colored hat and responded that he just got it from a friend of his. Officer McCoy then decided to transport the trio one and one-half blocks to see if the burglary victim could identify the hat. Before placing the group in the police wagon, the officer conducted a "pat-down" search which revealed that one of appellant's companions possessed a ring and a silver dime with numismatic value. The complainant identified all three items as being taken from his house. All three men were then arrested and taken to the police station.

■ Appellant does not actively contend that the police officer was not permitted to stop and detain him briefly for identification. Nor does appellant assert that the police lacked probable cause to arrest him once the hat had been identified. Rather he contends that probable cause was lacking when the officer drove appellant to the burglarized house. Appellant identifies the officer's placing him in the patrol wagon as the time of the arrest, because he was subject to the control of the officer.

While we accept that appellant was required to accompany the officer for the one and one-half block trip, we disagree with his conclusion that in order to do so the police were required to have the same quantum of proof necessary to support a full-blown arrest. We are not faced with the aspects of such an arrest but, rather, with an identification procedure by which the officer could determine whether there was probable cause to arrest appellant and formally charge him with the criminal offenses. Instead of arresting appellant, the officer made an intermediate response by

transporting appellant and the property a short distance for identification. Intermediate responses previously have been approved by the courts of this Commonwealth. *Commonwealth v. LeSeuer*, 252 Pa.Super. 498, 382 A.2d 127 (1977); *Commonwealth v. Harper*, 248 Pa.Super. 344, 375 A.2d 129 (1977), as guided by the Supreme Court decisions in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The officer in this case was reluctant to let appellant free to leave as neither appellant nor his companions had identified themselves; and the hat, as evidence, could easily be destroyed or concealed. At the same time, the officer was reluctant to arrest appellant on the basis of the information known to him at this time. Rather than force the officer to choose between such opposite responses, this court sanctions the use of an intermediate response such as the one used in this case. See also *Commonwealth v. Harper*, supra. Obviously, once the hat had been identified, the officer had the requisite information to arrest appellant. *Commonwealth v. Jones*, 457 Pa. 423, 428, 322 A.2d 119, 122 (1974). Accordingly, we find no error in the court's refusing to suppress evidence demonstrating that the hat had been stolen.

 Secondly, appellant contests the sufficiency of the evidence to sustain his conviction of burglary, theft and receiving stolen property. The standard of appellate review is clear and uncontested. "[T]he test of sufficiency of [the] evidence is whether accepting as true all the evidence, together with all reasonable inferences therefrom upon which the [factfinder] could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Green*, 464 Pa. 557, 565, 347 A.2d 682, 686 (1975); *Commonwealth v. Bailey*, 250 Pa.Super. 402, 378 A.2d 998 (1978). Appellant frames his argument that a conviction cannot stand "simply because he had a hat similar to one believed taken in a burglary, and was seen standing on a street corner next to a man [later] found to be in possession of items taken in a

burglary of a nearby house." If this were the extent of the Commonwealth's evidence, appellant's argument would be much stronger. Additional circumstantial evidence was produced at trial which, taken along with permissible inferences from such evidence, supplied any missing link in the chain of the Commonwealth's proof. Appellant was in possession of a camel-hair colored hat which the complainant testified was alike in every detail to the one stolen from his house. Furthermore, the police were instructed to investigate males in a vacant house with property which was later identified as that stolen from complainant's house. Shortly thereafter, appellant and his two companions were found in possession of some of the stolen property only one and one-half blocks away from the burglarized house. Finally, the burglars had crossed a muddy backyard in perpetrating the crime and appellant's shoes were covered with mud.

■ Although a conviction cannot rest upon mere presence near the scene of the crime, *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973), or upon mere suspicion or conjecture, *Commonwealth v. Bailey*, 448 Pa. 224, 292 A.2d 345 (1974), the Commonwealth's burden may be met entirely by circumstantial evidence, *Commonwealth v. Bailey, supra*, and it is sufficient if the circumstances are consistent with criminal activity even though they might likewise be consistent with innocent behavior. *Commonwealth v. Rambo*, 250 Pa.Super. 314, 378 A.2d 953 (1977); *Commonwealth v. Moore*, 226 Pa.Super. 32, 311 A.2d 704 (1973). Given the surrounding facts and permissible inferences in this case, we conclude that a factfinder could find appellant guilty beyond a reasonable doubt of the crimes charged.

■ Appellant's final contention is that the trial court abused its discretion in denying appellant's motion for a new trial on the basis of after discovered evidence. The new "evidence" is the testimony of the complainant provided during the hearing on post-verdict motions, that he was mistaken in his trial testimony that the hat in appellant's possession was stolen from his house. The complainant explained that at trial he believed that his friend, Michael

Leonard, had left the hat at his house, but later learned after trial that Leonard had found his hat. Apparently, the witness recanted his testimony at trial that the hat was in his house on the day of the robbery.

■ The trial judge who heard this modified testimony of the complainant believed it to be false and refused to grant a new trial. There were good reasons to reject it. First, it was hearsay based upon the alleged statements of Michael Leonard whose whereabouts were currently unknown, but believed to be Texas. Second, the testimony was only offered after appellant and his mother paid a visit to the complainant's home. Third, the complainant admitted having heard rumors in the neighborhood that appellant did not burglarize his home. Fourth, if the hat did not belong to Michael Leonard, and appellant's explanation that it belonged to a friend of his were true, why did not appellant's friend appear and testify? And, finally, at the hearing the complainant was argumentative with the assistant district attorney and, in general, conducted himself as an advocate for appellant's innocence than as a victim of a crime. These factors, when coupled with the strong and sure identification the complainant provided for the hat at trial, and his unshakeable certitude that the hat was in his house on the day of the burglary, provide ample basis for the court below to refuse to grant a new trial. Because "[r]ecanting testimony is [extremely] unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true." *Commonwealth v. Coleman*, 438 Pa. 373, 377, 264 A.2d 649, 651 (1970). And, on appeal, we may not interfere with the trial court's evaluation of the testimony unless there has been a clear abuse of discretion. *Commonwealth v. Anderson*, 466 Pa. 339, 353 A.2d 384 (1976); *Commonwealth v. Coleman*, supra. Based upon the foregoing, we can find no abuse of discretion in the court's rejecting the recanting testimony.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion in which HOFF-MAN, J., joins.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

The majority holds that the police, by putting appellant into the police wagon and transporting him to the scene of the burglary, did not "arrest" him, but instead carried out a permissible "intermediate response", short of a full arrest. At 392. This holding, I submit, is incorrect under a number of decisions, which Judge HESTER collected and stated in *Commonwealth v. Gray*, 262 Pa.Super. 351, 396 A.2d 790 (1979). In *Gray*, police were given a description of robbers and stopped four individuals, put them into the police van, and drove back to the scene of the robbery. Judge HESTER said:

> Nor do we have any trouble deciding that placing appellant in the police wagon constituted a full blown arrest. See, *Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978) (defendant arrested when escorted to a room by a police officer and locked therein); *Commonwealth v. Rosciola*, 240 Pa.Super. 135, 361 A.2d 834 (1976) (defendant arrested when handcuffed); *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974) (defendant arrested when placed in trooper's patrol car); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963): "An arrest may be accomplished by 'any act that indicates an intention to take [a person] into custody and subjects him to the actual control and will of the person making the arrest.'" Id., 411 Pa. at 68, 190 A.2d at 311. *Commonwealth v. Gray, supra*, at 792, n. 1.

*See also, Commonwealth v. Morton*, 475 Pa. 374, 380 A.2d 769 (1977) (arrest occurred when police handcuffed defendant and gave him no indication he could leave police building). In light of these cases, it cannot be seriously contended that the police did not arrest appellant, even though the distance they transported him was a short one.

The correctness of these Pennsylvania cases was recently underscored by the Supreme Court of the United States in *Dunaway v. New York*, 442 .U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). There, acting on a tip that did not amount to probable cause to arrest, the police "picked up" a suspect and took him to the station house for interrogation. The police admitted that the suspect was not free to leave (as, here, the majority "accept[s] that appellant was required to accompany the officer for the one and one-half block trip," at 392), but argued for just the sort of intermediate response (or "balancing test", *Dunaway v. New York, supra,* at 200, 99 S.Ct. 2248) that the Commonwealth urges here. The Supreme Court rejected that argument:

> The Fourth Amendment, applicable to the States through the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) provides: "The right of the people to be secure in their persons . . against unreasonable searches and seizures shall not be violated and no Warrants shall issue but upon 'probable cause . . . '." There can be little doubt that petitioner was "seized" in the Fourth Amendment sense when he was taken involuntarily to the police station. And respondent State concedes that the police lacked probable cause to arrest petitioner *before his incriminating statement during interrogation.* Nevertheless respondent contends that the seizure of petitioner did not amount to an arrest and was therefore permissible under the Fourth Amendment because the police had a "reasonable suspicion" that petitioner possessed "intimate knowledge about a serious and unsolved crime." Brief for Respondent at 10. We disagree. *Id.* at 207, 99 S.Ct. at 2253–2254 (footnotes omitted).

The Court refused to extend *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (upon which the majority relies). The nature of the intrusion in those cases, the Court said, was much less offensive than the intrusion forced upon the defendant in *Dunaway.* Indeed,

in neither *Terry* nor *Adams* was there a transporting of the defendants away from the spot where they were found:

In contrast to the brief and narrowly circumscribed intrusions involved in those cases, the detention of petitioner was in important respects indistinguishable from a traditional arrest. Petitioner was not questioned briefly where he was found. Instead, he was taken from a neighbor's home to a police car, transported to a police station, and placed in an interrogation room. He was never informed that he was "free to go"; indeed, he would have been physically restrained if he had refused to accompany the officers or had tried to escape their custody. The application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of this magnitude is termed an "arrest" under state law. The mere facts that petitioner was not told he was under arrest, was not "booked," and would not have had an arrest record if the interrogation had proved fruitless, while not insignificant for all purposes, see *Cupp v. Murphy*, 412 U.S. 291 [93 S.Ct. 2000, 36 L.Ed.2d 900] (1973), obviously do not make petitioner's seizure even roughly analogous to the narrowly defined intrusions involved in *Terry* and its progeny. Indeed, any "exception" that could cover a seizure as intrusive as that in this case would threaten to swallow the general rule that Fourth Amendment seizures are "reasonable" only if based on probable cause. *Dunaway v. New York, supra*, at 212, 99 S.Ct. at 2256.

The majority finds support for its "intermediate response" theory in two cases of this court. However, one, *Commonwealth v. LeSeuer*, 252 Pa.Super. 498, 382 A.2d 127 (1977), is inapplicable. In that case, the majority held that probable cause to arrest existed. Therefore, the question we face here was solved at the outset. It is true that in dissent I argued for what might be called an intermediate response, but I in no way indicated that such a response could encompass taking the defendants away. Indeed, that was precisely what I objected to. Instead, I argued for exactly what I

urge here: that the police, instead of transporting suspects, use their investigatory skills at the spot where they find the suspects. Here, the putative owner of the camel colored hat was one and one-half blocks away from appellant. There is no reason why the police could not have protected their investigation, and appellant's rights too, by asking the owner to travel the one and one-half blocks to identify the cap. *Terry* would certainly allow such a brief, on-the-spot detention of appellant.

*Commonwealth v. Harper*, 248 Pa.Super. 344, 375 A.2d 129 (1977), provides more support for the majority, but is readily distinguishable. There, the police had probable cause to believe that the perpetrators of a crime were among the passengers on a bus. All those on the bus who fit the description were taken to the hospital, where the victim identified the defendant. As the opinion notes, at least the police knew they had probable cause to arrest *somebody* in the group; furthermore, the victim could not come to the scene. Here, however, there was no such neatly described class definitely including the perpetrators, and the owner of the hat was readily available to come to the site.[1]

Having decided that the police arrested appellant, I next ask whether there was probable cause for this arrest. The police were told only that "males" were seen with apparently stolen property; from footprints in the mud, the police could also presume that the culprits would have muddy shoes. They stopped appellant and his companions, although they did not know how many men were involved, their ages, their races, or any other item of description. The group was stopped a block and a half from the scene of the crime, and about 25 minutes after the call about the "males" came over the radio. I submit that nothing conclusive—or even strongly probative—can be deduced from appellant's location in mid-afternoon in a residential area. The most probative fact was that appellant and his two friends had mud on their shoes. Yet the officer testified that the area included many

---

1. I express no opinion whether, in light of *Dunaway v. New York, supra, Commonwealth v. Harper* remains good law.

houses with back yards, and a demolition site that would have had "some" dirt, N.T. suppression hearing at 17, 21. Appellant could produce no identification, seemed "evasive," and had a hat in a bag. These facts do not amount to probable cause to arrest.[2] The majority, by analyzing the issue in terms of whether the police were permitted to transport appellant on less than the quantum of proof necessary to support a full arrest, apparently concedes as much.

The physical evidence and appellant's statements being fruits of an unlawful arrest, I should reverse the judgment of sentence and remand for a new trial.

HOFFMAN, J., joins in this dissenting opinion.

---

2. Since the frisk, which yielded a man's ring and old dime, was conducted incident to the decision to load the three into the police van, those items—assuming they were probative—may not be considered in determining the question of probable cause to arrest.