421 A.2d 721

**COMMONWEALTH of Pennsylvania**

v.

**Joseph DANIELS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1979.

Filed Sept. 23, 1980.

Donald G. Joel, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, WICKERSHAM and EAGEN, JJ.*

BROSKY, Judge:

Joseph Daniels was found guilty at trial without a jury of possession, possession with intent to deliver, and manufacturing with intent to deliver a controlled substance. He was sentenced to seven and one–half (7½) to fifteen (15) years imprisonment on June 22, 1978. This appeal followed.

On May 11, 1977, Officers Arthur Mee and Paul Rich responded to a telephone call from an anonymous caller that a screaming white female was being taken from a car to a building. The caller only identified himself as a third floor tenant of the same building–2335 North 13th Street, Philadelphia, Pennsylvania. The policemen rushed to the location of the alleged crime.

Upon arrival, one of the officers knocked on the front door of the apartment identified by the anonymous caller and announced himself by asking if everything was "all right" (appellant's brief, page 2). Appellant unlocked the door, did not respond to the policeman's questions, and allowed the policemen to enter. Appellant walked through the apartment, followed by Officer Rich, to a bedroom. Officer Mee entered the front room of the apartment where he discovered Catherine Snelick, a white female.

Officer Rich discovered a box of plastic bags "containing a tan substance, later identified as heroin" (appellant's brief, page 2). The box was open and within Officer Rich's plain view. Officer Rich stated in his testimony, described what inadvertently came into his view when he entered appellant's room: ". . . At that point, straight ahead of us (Officer Rich and Daniels) on the dresser, was a box containing I believe, it was thirty bundles of tan powder." Officer Mee found Ms. Snelick sitting on the floor partially covered with a green plant, later identified as marijuana, rolling a cigarette containing the plant. Joseph Daniels and Catherine Snelick were then placed under arrest and taken into custody.

* Chief Justice MICHAEL J. EAGEN of the Supreme Court of Pennsylvania, is sitting by designation.

Ms. Snelick subsequently obtained an agreement from the Commonwealth not to prosecute in return for her testimony.

A hearing was held, pursuant to Daniels' motion to suppress evidence illegally seized, on December 22, 1977. The lower court suppressed evidence not within Officer Rich's plain view taken from a bureau in the bedroom. All other physical evidence was not suppressed.

Appellant bases this appeal on three issues: first, whether the lower court erred in not suppressing all physical evidence; second, whether Catherine Snelick was properly immunized to give testimony; and third, whether the Commonwealth laid a proper foundation to use police chemist Perkins, who identified the physical evidence as controlled substances, as an expert witness.

It has long been established that the Fourth Amendment does not prohibit all warrantless searches, only those which are unreasonable. *U.S. v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1949). And what is reasonable must be judged on the totality of the circumstances of each particular case. *U.S. v. Samuels*, 374 F.Supp. 684 (E.D. Pa. 1974). If, however, a search would be unreasonable, the police must have a valid warrant to conduct a search unless their actions fall within one of the well established exceptions to the warrant requirement.

In the instant case, the officers made a proper search of appellant's apartment. They had the consent of Daniels to enter the premises; and once within the apartment, all evidence which was admitted below came within their plain view. The officers neither asked for nor demanded admission. Their entry was the result of appellant's free action. Furthermore, even if Daniels did not consent to their entry, his actions, when viewed in combination with the anonymous telephone call, confronted police with very suspicious circumstances warranting additional inquiry.

The Supreme Court has stated in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973): "[w]hen a prosecutor seeks to rely upon consent to

justify the lawfulness of a search, he has the burden of proving that the consent was in fact, freely and voluntarily given." Id. at 222, 93 S.Ct. at 2045. In *U.S. v. Ruiz–Estrella*, 481 F.2d 723 (1973), the Second Circuit stated:

> ... While the question of voluntariness is one that must be resolved through an examination of "the totality of all the circumstances" [*Schneckloth v. Bustamonte*, supra, at 227, 93 S.Ct. at 2048] the [Supreme] Court emphasized that the prosecution's burden could not be met by *only showing acquiescence to a claim* of lawful authority, id. at 233, 93 S.Ct. 2041 [at 2050] ... (emphasis added)

The test for the validity of consent has been given further explanation in *Virgin Islands v. Berry*, D.C., 385 F.Supp. 134 (1974) where the court set the following guide to the *Schneckloth* test.

> ... Factors to be considered by a court in assessing the voluntariness of the consent include the nature of the on the scene questioning, the subjective state of mind of the person who consents, his educational background, and the presence or lack of probable cause to arrest or search the subject.

Id. at page 137.

■ Officers Mee and Rich approached Daniels at his door and asked if everything was "all right". Daniels opened the door and walked away without responding to the officers' questions. Appellant voluntarily opened the door when he saw uniformed police officers. He did not respond to the policemen's question and in doing so, we hold, consented to their entry at least so they could complete their questioning.

The consent issue in the instant case is not clearcut because Daniels did not respond to the officers. While on the totality of the circumstances it appeared he consented, it is uncertain because their verbal exchange was very limited. Nevertheless, the police acted properly. The apparent consent of Daniels presented the officers with very suspicious circumstances. They could not know if everyone within the apartment was "all right" let alone who was in the apartment.

We recognize that police have long followed the practice of stopping and questioning suspicious persons where they lack sufficient probable cause to arrest the individual. This practice was held not to violate the Fourth Amendment in the Supreme Court's landmark case, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There is very strong public policy in favor of permitting police to respond to reports of crime, to investigate, and hopefully, prevent any injury. In *Commonwealth v. Greber*, 478 Pa. 63, 385 A.2d 1313 (1979), the Pennsylvania Supreme Court discussed the *Terry* doctrine:

 The prosecution does not dispute that detaining appellees by blocking their automobile constituted a seizure within the meaning of the Fourth Amendment. Even if such an intrusion is not an arrest, as the prosecution argues, and if *Terry* is applicable, the seizure in this case does not meet the requirements of *Terry*. A stop for investigatory purposes is justified under *Terry* only if the "police officer observes *unusual conduct* which leads him reasonably to conclude in light of his experience *that criminal activity may be afoot....*" (Emphasis added.) *Terry, supra*, 392 U.S. 1 at 30, 88 S.Ct. at 1884, 20 L.Ed.2d 911. Even if we were to apply this rationale to the present case, the police conduct here would remain unlawful because the record satisfies us that these police officers did not observe any unusual conduct. As correctly noted by the suppression court, the officer in question simply "assumed" that criminal conduct was occurring.

Id., 478 Pa. at 67, 385 A.2d at 1316. Essentially, *Terry v. Ohio, supra*, states that "a police officer may in appropriate circumstances and in an appropriate moments approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Commonwealth v. Anderson*, 481 Pa. 292 at 295, 392 A.2d 1298 at 1299 (1978), citing *Terry v. Ohio, supra*, 392 U.S. 22, 88 S.Ct. at 1880, see also *Commonwealth v. Hunt*, 280 Pa.Super. 205, 421 A.2d 684 (1980); *Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973) which cites *Com-*

monwealth v. Berrios, 437 Pa. 338, 263 A.2d 342 (1970); Commonwealth v. Hicks, 434 Pa. 153, 253 A.2d 276 (1969); Commonwealth v. Clarke, 219 Pa.Super. 340, 280 A.2d 662 (1971).

■ The police legitimately were at appellant's door in response to a report of an ongoing crime. They introduced their interest in appellant's apartment; and it was his criminally suspicious conduct, viewed in light of the anonymous call, which permitted their entry. This is especially true when viewed in conjunction with his apparent consent. The police behaved responsibly in trying to question Daniels. Once confronted with his suspicious behavior, their inquiry became even more imperative. They had no choice but to follow Daniels into his bedroom if they wanted to continue questioning him.

In Commonwealth v. Shaw, 476 Pa. 543, 383 A.2d 496 (1978), the Pennsylvania Supreme Court held that the doctrine established under Terry v. Ohio, supra, was only applicable where police were legitimately on the premises. There, the court held police were properly admitted on the first floor of a premises, they could not go to the second floor of the house. In the instant case, police were properly admitted into the apartment and their legitimate inquiry required they follow the appellant into his apartment. They at no time entered any portion of the apartment but on the appellant's lead.

Appellant contends the police had no authority to travel past the front room. We disagree. The Terry line of cases has been expanded in Pennsylvania to include an "intermediate response" applicable to circumstances where facts may not warrant an arrest. These situations are similar to the one in the instant case where police are duty bound to assure the safety of the woman and to inquire into the circumstances which induced their arrival. In other words, police should be encouraged to investigate all reports. This must be balanced against the appellant's privacy interests. Rather than force the officer to choose between making no inquiry and making an unwarranted search of the premises, we

allow him the "intermediate response" of questioning the appellant. *Commonwealth v. Harper*, 248 Pa.Super. 344, 375 A.2d 129 (1977); *Commonwealth v. Lovette*, 271 Pa.Super. 250, 413 A.2d 390 (1979). Of course, under the facts in this case, the police could not continue their inquiry without following Daniels.

While we have determined that the police had sufficient grounds to enter the bedroom under the *Terry* analysis alone, the Commonwealth's position is clearly strengthened by "intermediate response" rationale adopted by this court.

Therefore, once the officers entered the premises legitimately, they sought to question the appellant. In order to do so, he was followed to a bedroom where contraband came into plain view. This court made a careful review of the plain view doctrine in *Commonwealth v. Adams*, 234 Pa.Super. 475, 341 A.2d 206 (1975), where we stated that the plain view doctrine requires two distinct findings: 1) the police must legitimately be on the premises, and 2) the view must be inadvertent. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); see also *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1973); *U.S. v. Davis*, 461 F.2d 1026 (3d Cir. 1973).

In *U.S. v. Herndon*, 390 F.Supp. 1017 (1975), the court recounted the plain view doctrine. They stated:

... In *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, [2037], 29 L.Ed.2d 564 (1970), Justice Stewart held that where the initial intrusion that brings the police within plain view of an article is supported not by a warrant but by one of the recognized exceptions to the warrant requirement, the seizure is legitimate. They stated that the plain view doctrine may be asserted where an officer is not searching for evidence against the accused, but inadvertently comes across an incriminating object. Id. at 466, 91 S.Ct. 2022 [at 2038]. Where objects fall in the plain view of an officer who has a right to be in the position to have that view, they are subject to seizure and may be introduced in evidence. *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992 [993], 19 L.Ed.2d 1067 (1968).

See also *Commonwealth v. Davenport*, 453 Pa. 235, 308 A.2d 85 (1972); *Commonwealth v. Legg*, 258 Pa.Super. 294, 392 A.2d 801 (1978); *Commonwealth v. Getz*, 236 Pa.Super. 469, 344 A.2d 686 (1975); *Commonwealth v. Cubler*, 236 Pa.Super. 614, 346 A.2d 814 (1975); *Commonwealth v. Rota*, 222 Pa.Super. 163, 292 A.2d 496 (1972); *Commonwealth v. Bowers*, 217 Pa.Super. 317, 274 A.2d 546 (1970).

All evidence which inadvertently came within the plain view of Officers Mee and Rich while legitimately on the appellant's premises was properly admitted into evidence.

The lower court reached the same result as we do today. However, they did so, in part, through use of the exigent circumstances exception to the warrant requirement. We believe that it is imperative that no finding of sufficient exigent circumstances be made in this case. The police responded appropriately to a distress call. Nevertheless, that call was anonymous and there were no indicia of reliability of information accompanying the telephone call. It was nothing but a naked assertion that a white woman was screaming while being taken into an apartment in a black neighborhood.

Therefore, we hold that there were not sufficient exigent circumstances present to make the search valid for that reason alone. The lower court erred in relying on the exigent circumstance exception to the warrant requirement. All decisions made pursuant to the exigent circumstances exception must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances. An anonymous call of an alleged crime cannot be sufficient to trigger the exception. It it were, the exception would in short order become the rule.

Daniels argues that Ms. Snelick was not properly immunized to give testimony. The appellant lacks standing to raise this issue. *Commonwealth v. Russell*, 225 Pa.Super. 133, 310 A.2d 296 (1973).

Appellant's final contention is without merit. An expert witness may be qualified in several different ways. An expert may acquire his knowledge through occupational, practical or other experiential training. He is not required to acquire his expertise through academic training. *Churbuck v. Union Railroad Company*, 380 Pa. 181, 110 A.2d 210 (1955).

Accordingly, the decision of the trial court is affirmed for the reasons stated herein.

EAGEN, J., concurs in the result.