430 A.2d 1188

**COMMONWEALTH of Pennsylvania,**

v.

**James LUMB, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed June 12, 1981.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

Appellant was convicted of robbery, burglary and conspiracy. On May 23, 1979, he was sentenced to serve from two to ten years imprisonment.[1] Post-verdict motions were filed and denied. This appeal followed. Lumb contends that evidence of an identification of him after police had specially transported him to the scene of the crime involved in the proceeding should be excluded. He asserts: (1) that the circumstances surrounding the identification were too suggestive and (2) that the evidence obtained related to the offense in this proceeding should be excluded because there was no probable cause for his arrest. We affirm the decision of the trial court.

On December 20, 1978, Ms. Kathryn Weiland was assaulted and battered by four men who broke into her residence at the Barclay Hotel in Philadelphia. They stole five hundred dollars and a lamp from her.

A hotel security officer, Stephen Mensing, observed the men as they ran through the lobby of the hotel. Mensing had no idea at the time that Weiland had been assaulted or robbed. Mensing saw the men only for a few seconds as they ran out of the hotel. He noted appellant was wearing a dark blue coat and that he had unusual facial features

---

1. Lumb was also sentenced to serve ten years probation, to run concurrently, and from six months to five years imprisonment to be served concurrently.

which distinguished him from the other men.[2]  At trial, Mensing identified Lumb.  He testified:

Q.  Now, you say that you recognized the defendant as the man that was there.  What about the defendant do you recognize?

A.  Well, he has kind of an odd-shaped head.

Q.  What do you mean an odd-shaped head?

A.  It's very round around the forehead.  It slopes down to his chin.

Q.  What else beside his odd-shaped head did you recognize?

A.  I recognized his face.  I saw his face, a front view. He kind of turned and looked as they were going through the door.  He was the only one I could see because the rest of them had their parka hoods on.

Q.  Did the parka you saw him with have a hood on it?

A.  Yes.

Q.  But it was not up?

A.  No.

After the police were advised of the crime, an officer— Gallagher—saw three men tampering with an attendant's shed at a parking lot some distance from the hotel.  When Gallagher shone his spotlight on the men, they fled.  This incident was reported to police headquarters by radio.  At this time, the two incidents and the men had not been connected.

Later, another officer—Faulkner—apprehended the appellant.[3]  Gallagher subsequently identified Lumb as one of the persons he saw at the parking lot.[4]  Appellant was then transported to the hotel along with several other persons police had "picked up" that evening.

2.  The record discloses that several other men were wearing blue coats.

3.  The police arrested the appellant after he dropped an envelope containing marijuana on the ground.  While appellant does not challenge this arrest, the drug charge was subsequently dropped.

4.  The Commonwealth does not argue the police had probable cause to arrest at the parking lot.

Mensing was advised of the existence of the men the police transported to the hotel. He viewed them while they were still within a police van. Appellant claims this procedure was unconstitutionally suggestive. He also asserts he could not properly be transported to the hotel because police did not have probable cause related to the crimes at the hotel. Appellant does not challenge the validity of his initial arrest. Thus, our inquiry focuses on the identification.

The Commonwealth argues we should treat this case as one falling within our "intermediate response" rule. In *Commonwealth v. Lovette*, 271 Pa.Super. 250, 413 A.2d 390 (1979), we held that police were permitted to transport a person for identification to a burglary scene when the appellant was arrested for the burglary. We said:

> While we accept that appellant was required to accompany the officer for the one and one-half block trip, we disagree with his conclusion that in order to do so the police were required to have the same quantum of proof necessary to support a full-blown arrest. We are not faced with the aspects of such an arrest but, rather, with an identification procedure by which the officer could determine whether there was probable cause to arrest appellant and formally charge him with the criminal offenses. Instead of arresting appellant, the officer made an intermediate response by transporting appellant and the property a short distance for identification. Intermediate responses previously have been approved by the courts of this Commonwealth. *Commonwealth v. LeSeuer*, 252 Pa.Super. 498, 382 A.2d 127 (1977); *Commonwealth v. Harper*, 248 Pa.Super. 344, 375 A.2d 129 (1977), as guided by the Supreme Court decisions in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The officer in this case was reluctant to let appellant free to leave as neither appellant nor his companions had identified themselves; and the hat, as evidence, could easily be destroyed or concealed. At the same time, the officer was reluctant to arrest appellant on

the basis of information known to him at this time. Rather than force the officer to choose between such opposite responses, this court sanctions the use of an intermediate response such as the one used in this case. See also *Commonwealth v. Harper*, supra. Obviously, once the hat had been identified, the officer had the requisite information to arrest appellant. *Commonwealth v. Jones*, 457 Pa. 423, 428, 322 A.2d 119, 123 (1974). Accordingly, we find no error in the court's refusing to suppress evidence demonstrating that the hat had been stolen.

Id., 271 Pa.Super. at 253, 413 A.2d at 392.

The instant case, however, differs from *Commonwealth v. Lovette*, supra, because the police herein arrested the appellant for a crime other than that for which he was eventually charged. In other words, no suspicion arose regarding the incident at the hotel until after the appellant was in custody for the drug related charge. Thus, the appellant was under arrest for another crime and in custody when the identification occurred.

■ The arrest was valid and unchallenged by the appellant. There are no allegations that the police were creating a "dragnet" into which persons are gathered and detained for the purpose of investigation. Here, the detention related to the initial offense was proper.[5] *Commonwealth v. Farley*, 468 Pa. 487, 364 A.2d 299 (1976).

In *Adams v. United States*, 399 F.2d 574 (D.C.Cir. 1968), cert. denied, 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1968), that court held that a defendant arrested for one crime held over for identification involving another crime could not be detained for identification proceedings unless police had probable cause related to the subsequent crime.

5. We note that there is no claim of a violation of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). Our recent decisions in *Commonwealth v. Rhem*, 283 Pa.Super. 565, 424 A.2d 1345 (1981), states clearly that the "*Davenport* 6 hour rule" only applies to statements. Thus, an identification procedure would not be in question under *Commonwealth·v. Davenport*, supra.

■ We agree with the majority in *Adams v. United States*, supra, and find that, where, as here, a valid custodial arrest is made and the arrested person is subjected to identification proceedings related to an entirely separate criminal incident that the police must have probable cause to arrest for the other crime or at the very least sufficient reasonable suspicions to warrant that they undertake an "intermediate response." Such a "response" would allow the police to transport the suspect to some location for the purpose of making an identification.

■ In the instant case, the police received word of the criminal incident at the hotel after they had appellant in custody. They received a description of the appellant which was very distinctive, and which description provided them with sufficient information upon which a trained police officer could base a reasonable suspicion necessary to justify the "intermediate response" of taking the appellant to the hotel for an identification procedure.

The Commonwealth's argument that the "intermediate response" rule is applicable is, however, inappropriate in the instant case. The information received by the police detailed the unusual appearance of the appellant's facial bone structure, along with his height, build and a coat he was wearing. Additionally, the police discovered the appellant within one-half hour of the incident at the hotel. We hold this evidence presented sufficient probable cause to place the appellant under arrest for the second crime. We recounted numerous cases in which probable cause was found to exist under facts similar to those herein in *Commonwealth v. Sabb*, 269 Pa.Super. 206, 212, 409 A.2d 437, 441 (1979) where we said:

> See, e. g., *Commonwealth v. Powers*, 484 Pa. 198, 398 A.2d 1013 (1979) (four or five negro males, one in green army fatigue jacket with hood pulled up, one in white tee-shirt, one 6′ 4″ tall, a brown overcoat with red knit cap); *Commonwealth v. Bynum*, 265 Pa.Super. 13, 401 A.2d 776 (1979) (two men, one wearing white hat and black coat, one wearing black coat, dungarees, sneakers; suspect ar-

rested only ten minutes walking distance from crime scene); *Commonwealth v. Tookes*, 236 Pa.Super. 386, 344 A.2d 576 (1975) (Negro male wearing red knit hat and brown leather coat and carrying large object; suspect arrested three blocks from crime scene, 5 or 10 minutes after call); see also, *Commonwealth v. Gray*, supra; *Commonwealth v. Washington*, 259 Pa.Super. 407, 393 A.2d 891 (1978); *Commonwealth v. King*, 247 Pa.Super. 443, 372 A.2d 908 (1977); *Commonwealth v. Brown*, 230 Pa.Super. 214, 326 A.2d 906 (1974). This is then not a case where a sketchy, meagre description supplied by a victim or witness simply will not support an arrest. See, e. g., *Commonwealth v. Sams*, 465 Pa. 323, 350 A.2d 788 (1976) (negro males running south on Eleventh St.); *Commonwealth v. Richards*, 458 Pa. 455, 327 A.2d 63 (1974); (white male, blondish thinning hair, medium height, "real skinny", 30 years old; suspect arrested far from scene of crime, several days later); *Commonwealth v. Ryan*, 253 Pa.Super. 92, 384 A.2d 1243 (1978) (negro male, 5' 8", wearing dark coat); see also, *Commonwealth v. Jackson*, 459 Pa. 669, 331 A.2d 189 (1975); *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969); cf. *Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 342 (1970). Nor is this a case where the suspect arrested did not match the description supplied to the police. See, e. g., *Commonwealth v. Pinney*, 474 Pa. 210, 378 A.2d 293 (1977) (police looking for two men: one with long, shaggy, black hair; one 5' 11", 180 lbs., long thin hair, mark on face; appellant, 5' 7", 150 lbs., light brown hair, no mark on face, did not sufficiently resemble either suspect number one or two); *Commonwealth v. Youngblood*, 241 Pa.Super. 72, 359 A.2d 456 (1976) (25 year-old bearded male "eyeballing" store did not sufficiently resemble description of 14 year old youth running from scene of robbery). Appellant in the instant case differed from the police radio description in that he was wearing a hat and a different pair of glasses. Such minor discrepancies can hardly vitiate an otherwise proper arrest. We are satisfied the description, coupled with appellant's proximity in time and place to the crime,

provided "that conclusive quality which would necessarily draw attention to a particular individual." *Richards*, supra, 485 Pa. at 463, 327 A.2d at 67.

Thus, the police properly subjected the appellant to the "show-up."

■ Next, appellant contends that the identification procedure was impermissibly suggestive. In *Commonwealth v. Perdie*, 249 Pa.Super. 406, 378 A.2d 359 (1977), we held that evidence of an identification would not be permitted at trial if circumstances under which the pretrial identification were undertaken were *so* suggestive as to cause there to exist "an irreparable likelihood of misidentification. [Citation omitted]." *Commonwealth v. Turner*, 454 Pa. 520, 523, 314 A.2d 496, 498 (1974).

The facts in this case are similar to those in *Commonwealth v. Dickerson*, 226 Pa.Super. 425, 313 A.2d 337 (1974), in which we held that an identification was not impermissibly suggestive when the defendant was handcuffed and in a police wagon. The same result was reached in *Commonwealth v. Perdie*, supra. In *Commonwealth v. Dickerson*, supra, and *Commonwealth v. Perdie*, supra, the person making the identification had ample opportunity to observe the accused during the crime. In the instant case, while Mensing did not witness the appellant commit the crime, he had a clear view of the appellant as he attempted to escape the scene of the crime. Accordingly, the evidence of the identification was properly admitted.[6]

Judgment of sentence affirmed.

SPAETH, J., concurs in result.

[6]. We do not decide whether the original arrest was proper because the appellant has not challenged the validity of that arrest.

Furthermore, we do not question the reliability of the identification of the appellant by a security guard rather than the victim. While, the record does not indicate that Stephen Mensing witnessed the appellant commit the crime or what description of the appellant the victim gave him, the appellant has not challenged the identification on grounds other than the immediate circumstances of the on-the-scene identification. We find no "special element of unfairness"

present at the identification under the circumstances complained of by the appellant. *Commonwealth v. Turner*, supra.