**STATE of Missouri, Respondent,**

v.

**Vincent Charles ABBOTT, Appellant.**

**No. WD 34009.**

Missouri Court of Appeals,
Western District.

Sept. 27, 1983.

Motion For Rehearing and/or Transfer
to Supreme Court Overruled
and Denied
Nov. 29, 1983.

Application to Transfer Denied
Dec. 20, 1983.

---

Robert G. Duncan, Gladstone, for appellant.

John Ashcroft, Atty. Gen., George W. Cox, III, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P.J., and KENNEDY and NUGENT, JJ.

WASSERSTROM, Presiding Judge.

Upon jury conviction of receiving stolen property, defendant Abbott was sentenced to three years imprisonment and a fine of $5,000. He appeals, raising the following points: (1) that the key evidence in this case was obtained by the prosecution through an illegal search and seizure; (2) that the evidence was insufficient to support a conviction; and (3) that the trial court improperly permitted the introduction of evidence with respect to another crime. We reject each of those points and therefore affirm.

Thomas E. Neel, Sr., a wholesale jewelry salesman, stopped overnight on July 10, 1978, in Sedalia, Missouri, during the course of a selling trip. He took his jewelry sample cases into his motel room and left for dinner. When he returned, he discovered that his room had been broken into and the sample cases were missing. The two empty sample cases were later found in an empty lot in Kansas City.

On February 14, 1979, FBI agents engaged in a search of Abbott's home at 3114 N.E. 65th Terrace, Gladstone, Missouri. During the course of that search, the agents found a metal box hidden in the basement, which contained 32 items of jewelry, 2 watches, gold coins and gold chains, over $30,000 in cash, certain handwritten notations, and receipts for payments which had been made by Abbott to a gasoline service station and to a doctor.

The notations contained in the metal box so found contained names, addresses and other information concerning a number of different individuals. One such individual was Neel (shown on the notation as "Tom Neal, Sr."), together with Neel's former address, the year and make of his automobile, and what appears to be a partial automobile license number. An FBI agent pro-

ceeded to interview Neel who identified seven of the jewelry items found in the metal box in Abbott's basement as similar to those which were in his stolen sample cases. Of the various items found in the search, only three rings were specifically described in the indictment. With respect to those rings, Neel testified that one was similar and the other two were "exactly similar" to those stolen from his room. Neel's employer was also interviewed and he testified that the three rings in question were "identical" in styling to those stolen from Neel. Neither was able to testify categorically that the three rings were the exact rings stolen, for the reason that many copies of these rings were manufactured and sold in the regular course of the jewelry business.

Another name contained in the notations was that of Maxwell Gould, a watch salesman. Immediately following Gould's name on the notation was his address. Gould was interviewed by the FBI; and the parties stipulated that his testimony would be that a sample case was stolen from his car on November 13, 1978, in Overland Park, Kansas, and that a watch found in the box from Abbott's basement was identical in style, kind and appearance to the watch stolen in the theft from his sample case.

A third note found in the metal box referred to witness Arthur Smallenberger. The note listed the number, year and color of his license plate, the make, model and year of his car, and went on to say that there was a "pickable bug" in the left front of the car. Smallenberger testified that the information on the note was accurate, that someone had tried to pick his alarm system with a key, but that the key broke off inside the lock. Smallenberger was a dealer in antiques.

Another notation described in detail a car owned by Martin Prezant, a salesman for Swank Company. Prezant's samples were stolen from his car in Kansas City, Missouri, in November, 1977. A fifth notation contained the name of a jeweler, his place of employment and an address.

## I.

### Legality of the Search and Seizure

For a proper understanding of this point, further facts must be stated relating to the search and seizure. A special strike force of the Department of Justice had been gathering evidence against a suspected crime group in Kansas City since June 1978. These government agents had sought and had received judicial permission for a number of wire taps on telephone lines and other electronic surveillance of conversations. In connection with the obtaining of those orders, the agents submitted some 1100 pages of affidavits, of which only a small portion was introduced into evidence in the present case. That portion, however, was sufficient to show a reasonable probability that the suspected group, of whom Abbott was one, was engaged in a concerted pattern of extortion, loansharking, obstruction of justice, gambling, skimming of casino winnings in Las Vegas, disposal of stolen property, murder and attempted murder. Among the electronic surveillance devices authorized were one in each of two automobiles owned by Abbott.

By February 14, 1979, as a result of their surveillance and information obtained from reliable confidential informants, the federal agents reasonably believed that the group under investigation was about to commit one or more murders, that Abbott was one of the "enforcers" who would be involved, and that paraphernalia to be used in the murder attempts was in place in the homes of the enforcement team, including Abbott's home. The federal agents therefore made an application to the federal magistrate on February 14, 1979, for a series of search warrants, and a number of warrants were issued by the magistrate to be served simultaneously. One such warrant authorized the search of the following premises: "3114 N.E. 65th Terrace, Gladstone, Missouri, an all white frame residence located at the intersection of North Waldrond and N.E. 65th Terrace, with an attached two car garage and a fenced back yard, and any vehicles on the curtilage (Vincent Abbott)". The items for which the search was to be

made were described as follows: "shotguns, wigs, windbreakers, rifles, pistols, silencers, scope targets, ammunition, disguises including beards and mustaches, jump suits, automobile keys, keys to hiding places, picks and devices to steal and hot wire vehicles, all used and intended to be used in connection with intended murder attempts. . . ."

A number of Federal agents served the search warrant at 3114 N.E. 65th Terrace, where they encountered Abbott, his wife and their children. Agent Rasmussen went to the basement, where he found a metal box hidden on top of the furnace. On opening the box, he saw the items already described in this opinion, none of which fell into the categories listed in the search warrant.

Rasmussen thereupon called the strike force headquarters for further instructions, and he was advised to seek a second search warrant to cover the items in the metal box. While waiting for the second search warrant to be issued and delivered, Rasmussen took the metal box from Abbott's home to one of the agent's automobiles outside.

### A.

#### The Second Search Warrant

Abbott challenges the second search warrant on the ground that the search and seizure had already been completed before the second warrant was ever issued. The state does not seek to justify the search and seizure based on the second warrant, but instead chooses to rely entirely upon the validity of the first search warrant and the seizure thereunder. We agree that the search and seizure here were justified by the first search warrant, and we therefore also refrain from any discussion concerning the validity of the second search warrant.

### B.

#### The First Search Warrant

Abbott challenges the first search warrant on the ground that there was no showing in the affidavits connecting the items or him with 3114 N.E. 65th Terrace, the place to be searched. He relies upon the rule that to obtain a search warrant there must be probable cause to believe that the object of the search is located in the particular place to be searched. *Steagald v. United States,* 451 U.S. 204, 213, 101 S.Ct. 1642, 1648, 68 L.Ed.2d 38 (1981).

Abbott argues that the record in this case contains only two affidavits offered to show that the search warrant was issued upon probable cause. One of these is the "master affidavit" dated February 14, 1979, tendered by the federal agents the day on which the numerous searches were actually made and which was offered to support the applications for that whole series of searches. Nothing in that lengthy master affidavit mentions the specific address 3114 N.E. 65th Terrace. The closest that the master affidavit comes in that respect is paragraph 63 which states in part: "Special Agents of the FBI have determined, from numerous personal observations by them and other law enforcement officers, during the course of this lengthy investigation that the subjects reside at the locations described on the face of the affidavits for requrested [sic] warrants." Also, handprinted on the first page of the master affidavit is the following: "Master affidavit referred to in each separate affidavit as attached pages." The separate affidavits so referred to were not in fact attached to the master affidavit as filed with this court.

The only other affidavit contained in this record on appeal is one dated May 25, 1978. The purpose of the latter affidavit was to obtain judicial permission for the use of electronic listening devices at various locations, including installation in two automobiles owned by Abbott. At three different places in this lengthy affidavit, 3114 N.E. 65th Terrace, Gladstone, Missouri, is referred to as the address given in the automobile registration of one of the cars registered to Abbott. Abbott particularly emphasizes that at one of these three points in the affidavit, the description reads as follows: "a 1977 gold Buick, four-door, 1978 Missouri license Z9M–917, registered to Vincent C. Abbott, 4615 Gladstone Boulevard, Kansas City, Missouri: and a 1975

Plymouth, two-door, Vehicle Identification Number RH23G5G219163, 1979 Missouri license GT6–995, registered to Vincent C. Abbott at 3114 Northeast 65th Terrace, Gladstone, Missouri (This vehicle was purchased from John Palma, and 3114 Northeast 65th Terrace is believed to be the residence of John Palma.)...."

■ Although Abbott has raised this point by a proper point on appeal, the point was not properly preserved in the trial court. He did move to suppress the items contained in the metal box and he further objected to the introduction of those items in evidence, but the objection in both cases was only the general one: "That the search warrants and each of them and the search and seizure made after the service of the first search warrant ... were illegal, unconstitutional and unreasonable in that the search warrants and each of them were issued without probable cause and were not supported by affidavits or written oaths setting forth facts constituting or establishing probable cause as is required by the *Fourth* and *Fourteenth Amendments* to the United States Constitution, *Article I, Section 15* of the Missouri Constitution, *Section 542.276*, R.S.Mo 1974, and *Rule 41* of the Federal Rules of Criminal Procedure."

Said allegation in the motion is inadequate since purely conclusory. As stated by this court in *State v. Upshaw,* 619 S.W.2d 925, 927 (Mo.App.1981): "Abundant authority holds that a motion to suppress which merely states conclusions and not facts presents nothing for the trial court to consider and preserves nothing for appellate review." Similarly: *State v. Abrams,* 597 S.W.2d 230 (Mo.App.1980); *State v. Redd,* 550 S.W.2d 604 (Mo.App.1977); *State v. Fields,* 536 S.W.2d 56 (Mo.App.1976); *State v. Jordan,* 506 S.W.2d 74 (Mo.App.1974).

Abbott asks, if we find this alleged error not to be properly preserved, that we review the question as a matter of plain error. The doctrine of plain error should be used only to avoid manifest injustice or a miscarriage of justice. Rule 30.20. No such situation exists here.

■ The federal agents had been investigating Abbott and his associates for a period of many months. The results of that investigation are reflected in 1100 pages of affidavits, of which only barely over 100 pages appear in our record. Those pages which we do have, however, plainly show that the FBI investigation included much shadowing of Abbott to and from his home.

Moreover, the master affidavit dated February 14, 1979, indicates that there was a separate face sheet for each search warrant application, such face sheets themselves being in the form of an affidavit. For some reason, the face sheet applying for the search of Abbott's home has not been included in the file of this case. A face sheet applying for the second search warrant of Abbott's home does appear in the legal file, and that face sheet affidavit does show the description of the house at 3114 N.E. 65th Terrace as being the residence of Vincent Abbott. Surely the absence from our record of a parallel face sheet affidavit for the first application can be accounted for solely as the result of inadvertence. There is no question but that 3114 N.E. 65th Terrace, Gladstone, Missouri, was Abbott's residence on February 14, 1979, and it is unreasonable to believe that the federal agents and the federal magistrate were not fully aware of that fact. If Abbott had raised his present objection specifically in the trial court, as he should have done, the prosecution would have had an opportunity to introduce as part of our record the face sheet applying for the first search warrant and possibly other portions of affidavits presented to the federal magistrate showing Abbott's residence. The failure of the prosecution to supply us with an affidavit explicitly showing 3114 N.E. 65th Terrace to be Abbott's residence cannot be deemed, under the circumstances, a source of manifest injustice or a miscarriage of justice.

■ Abbott further argues that the affidavits show no connection of him with the offense for which the search warrant was issued or the items listed in the search warrant. That contention is without merit.

The affidavits before us support a reasonable belief by the federal magistrate that the criminal syndicate of which Abbott was a member had caused the murder of Michael Spero and the wounding of Carl and Joseph Spero; that the failure to kill Carl Spero was a matter of great concern to this criminal enterprise and plans were in existence to kill him before he could kill one or several of them. Because of the fear of Carl Spero and the need to keep material near for their own defense and the need to have material available to kill Carl Spero as soon as the opportunity arose, it was clear that the items such as those listed in the first warrant would likely be in the possession of the "enforcers" of whom Abbott could reasonably be believed to be one. Further, there had been no raids upon the homes of members of this enterprise for many years and therefore it could be believed that the members would feel safe in keeping these materials in their homes.

Upon the above showing, the federal magistrate could reasonably believe that Abbott was connected with the offense under investigation and with the objects for which the search was sought. All that had to be produced to the issuing magistrate was a reasonanble probability, not a prima facie showing, and deference must be given to the finding by the federal magistrate. *United States v. Leichtling,* 684 F.2d 553 (8th Cir.1982); *State v. Rohrer,* 589 S.W.2d 121 (Mo.App.1979).

■ Abbott further argues that even if the first search warrant was properly issued, it did not list the items found in the metal box in Abbott's basement and therefore seizure thereof was not warranted. This objection by Abbott is answered by the plain view doctrine. Agent Rasmussen was properly in the basement pursuant to the search warrant, he was entitled to look into the box in an effort to find the items listed in the search warrant, and his discovery of the various items in the box, including the rings upon which this prosecution is founded, was purely inadvertent.

Abbott admits that much but claims in his brief that the incriminating nature of the evidence found in the metal box must have been "immediately apparent" to Rasmussen. Since the preparation and submission of the briefs in this case, however, the United States Supreme Court has changed the requirement in question in *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). In that case the Supreme Court held:

"Decisions by this Court since *Coolidge* [*v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)] indicate that the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high decree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine.

. . . . .

As the Court frequently had remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' *Carroll v. United States,* 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required."

Under the above test enunciated by *Brown,* the seizure of the evidence in question was warranted. The criminal group of which Abbott was reasonably believed to be a member was reasonably believed to be engaged in the disposition of stolen property, among other criminal activity. Jewelry and watches would normally be likely items to be found in a fencing operation. Moreover, the large amount of money found in the metal box (together with another $8,000 found in a shoe upstairs) were additional suspicious circumstances. In view of all of the facts known to Rasmussen and the other agents, the seizure of this property was fully warranted.

## II.

### Sufficiency of the Evidence

 Under his second point, Abbott argues that there was no evidence to establish that the items of jewelry found in his basement were in fact the same items as had been stolen or that he knew or believed they had been stolen. Abbott stresses in his argument that although the jewelry found in his basement may have been exactly similar or identical in styling to the jewelry stolen, that has little significance because of the very large number of like items of identical jewlery which had been distributed throughout the trade.

If the items of jewelry were the only evidence produced in evidence, Abbott's argument would have considerable force. The fact is, however, that along with the jewelry in question, the metal box also contained a number of highly significant handwritten notations. These notations listed information regarding jewelry salesmen who had suffered the theft of their samples. Neel was one of these salesmen so referred to, and he identified some of the jewelry found in the box as identical to samples stolen from him. This evidence, taken in combination, justified submission to the jury. *See Commonwealth v. Lovette,* 271 Pa.Super. 250, 413 A.2d 390 (1979), reversed on other grounds, 498 Pa. 665, 450 A.2d 975 (1982).

## III.

### Evidence Concerning the Gould Theft

For his third point, Abbott objects to the reception of evidence concerning the theft of the Gould samples and the identification by Gould of one of the watches found in Abbott's basement as being identical to one of the sample watches stolen from Gould. Abbott argues that there was no sufficient evidence to show that the watch found in his basement was stolen or that he had any connection with the theft from Gould. What has already been said under Section II of this opinion, applies also to the present argument.

Abbott further argues that the evidence concerning the Gould theft was also improperly admitted because that related to a separate crime. Although generally speaking a separate crime cannot be introduced in evidence, there is a well recognized exception where the evidence of the other crime tends to establish a common scheme or plan. *State v. Moss,* 627 S.W.2d 667 (Mo.App.1982). The present case falls within that exception.

Affirmed.

All concur.