**Alexander A. PHILLIPS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 5, 1971.

Rehearing Denied Dec. 17, 1971.

W. Thomas Bunch, Angellis & Vimont, Lexington, for appellant.

John B. Breckinridge, Atty. Gen., Douglas E. Johnson, Sp. Asst. Atty. Gen., Frankfort, for appellee.

OSBORNE, Judge.

On April 27, 1970, appellant Alexander A. Phillips, with two female companions, left Cleveland, Ohio for California. Sometime before reaching Lexington, Kentucky, he picked up Rick Henson, who was hitchhiking to the University of Kentucky, where he was a student. On the way to Lexington, Henson noticed a 22 automatic pistol over the sun visor of the car and ascertained that there was a 38 Colt revolver with white handles in the glove compartment. Shortly before the party reached Lexington, appellant pulled the automobile to the side of the road and proceeded to test-fire both weapons. They were found to be in working order. After arriving in Lexington, appellant delivered Henson to his apartment. He and his companions went to the Downtowner Motel arriving there at approximately 1:30 a. m.

Because of some conversation in the car that led Henson to believe appellant and his companions might be planning a robbery in Lexington, Henson became worried after arriving home and called the Lexington City Police Department relaying information to them as to what had transpired on the trip. Following this call, the Police Department sent detectives to talk with Henson. They interviewed him about the circumstances and returned to the Police Station where they left a note for the day shift, which followed them on duty, advising them of the circumstances. When the day shift came on, Detectives Luther Cole and Michael Monohan were assigned to the case. They proceeded to the Downtowner Motel where they checked the register and ascertained that the subjects were still in their room. This was approximately 8 a. m. Following this check, they positioned themselves outside the motel where they could keep the room under surveillance. About 9 or 9:30 a. m. appellant emerged from the room, carefully surveyed his surroundings, and entered the automobile. He started the motor and sat there approximately five minutes. Then the two girls

emerged from the room and went around the corner away from the room and the automobile. Appellant followed them in the car driving across to where they were, whereupon, they jumped into the car. As the car pulled away from the motel, Detectives Cole and Monohan pursued it. Because of intervening traffic, they were unable to stop the car for several blocks. Prior to stopping the car, they radioed for assistance and had another police vehicle pull in front of the car in order to block its passage. They, then, pulled behind it and approached the vehicle in which appellant and his companions were riding. Detective Cole requested appellant to let him see his driver's license. This was handed to the detective. He examined it and asked for his automobile registration. Appellant advised him that the car was rented and that he had the rental papers. Whereupon, Cole requested to see these papers. Appellant reached in the glove compartment in order to obtain the papers. As the door opened, Detective Cole saw therein the white-handled Colt revolver. He immediately placed appellant and his companions under arrest, took them from the car and proceeded with a cursory examination of the inside. He discovered the 22 automatic pistol over the sun visor.

Appellant was indicted in the Fayette Circuit Court and tried for violation of KRS 435.230, carrying concealed on or about his person a deadly weapon. Upon trial of the case, the foregoing facts were proven by the Commonwealth. Appellant did not take the stand. A jury found him guilty of the offense charged and fixed his punishment at two years in the penitentiary. From that conviction, this appeal is prosecuted.

Appellant now contends: First, that the arrest without a warrant under the circumstances violated his rights under the Fourth Amendment of the Constitution of the United States and the guns discovered as a result of the search were improperly admitted in evidence for the reason that the officers had 8½ hours in which to procure a search warrant and search the automobile, therefore, there was no exigent circumstance. In support of this contention counsel cites many cases. We will not review them all as several of them are not applicable to the situation presently before us. We concede that the law of this Commonwealth holds a search warrant necessary in order to search an automobile unless the officer has *probable cause* to search based upon reliable information or observation. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Commonwealth v. Hagan, Ky., 464 S.W.2d 261 (1971). We further concede that probable cause is the criterion normally followed in situations such as the one presently before us. We further concede that an arrest cannot be a pretext for an otherwise illegal search. We do not believe that the cases cited by appellant are applicable to the situation presently before us. Appellant contends that once the officers received information that there might be a robbery committed and that the persons suspected of it had in their possession guns, the police had no choice but to immediately procure a search warrant, search the automobile and room, and place the suspects under arrest. We believe this contention is untenable. Police officers must be given reasonable discretion and a wide latitude of action in investigation of crime. Courts are in no position to say as a matter of law that an officer must break off an investigation at any particular point in time or that he must move in and effect an arrest at any particular time. These are matters that do and must remain in the reasonable discretion of the officer in the field conducting the investigation. In the case before us the officers had information that the suspects were armed and were possibly contemplating a robbery. For this court to say as a matter of law that the investigating officers had no choice when they received the information but to forthwith obtain a warrant, enter the motel, search the room and automobile, would be for us to substitute our judgment for that of the working police officers in the field.

This we will not and cannot do. We believe the situation before us is covered by two cases decided by the United States Supreme Court, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Chambers v. Maroney, supra.

■ In the Terry case a police officer in Cleveland, Ohio had certain suspects under surveillance. He noticed that they cased a store window some 24 times. After making these observations, the officer approached the three, identified himself as a policeman, and asked their names. The three suspects mumbled something which the officer could not understand. The officer then spun them around and patted down their outside clothing, thereby discovering that they were armed. In passing on this case the Supreme Court made several rulings which we deem to be applicable to the case before us and controlling. These rulings are as follows:

1. The Fourth Amendment right against unlawful search and seizure is now applicable to the states by virtue of the Fourteenth Amendment and, as such, protects people. Therefore, the search of an individual regardless of whether he is in his home, in an automobile, or walking on the street is governed by the Fourth Amendment.

2. When a reasonably prudent police officer believes that his safety or that of others is in danger he may make a reasonable search for weapons of the person believed by him to be armed and dangerous, regardless of whether he has probable cause to arrest the individual or not. This is true even though the officer is not absolutely certain that the individual is armed. But the law requires that a police officer secure a warrant when practicable before making a search or an arrest. This procedure is not demanded where swift action, based upon on-the-spot observations of the officer, is necessary.

3. An officer justified in believing that an individual, whose suspicious behaviour he is investigating, is armed may neutralize the threat of physical harm and may take any necessary means to determine whether the person is carrying a weapon or not.

4. Where the search is confined to what is minimally necessary to determine whether the party is armed for the purpose of protecting the officer, it is reasonable.

In the case before us the officers had information that appellant and his companions were fully armed and that they were probably contemplating a robbery. For this reason we believe under the authority of Terry there is no doubt but that the officers, having good cause to stop and approach the automobile, could immediately for their own protection make such search as to them at that time seemed reasonably necessary for weapons in order to secure their own persons against possible harm.

In the Maroney case we have a similar situation except there the search was of an automobile as it was in the case before us. The court in the Maroney case held, if there is probable cause, an automobile because of its mobility may be searched without a warrant in circumstances that would not justify a warrantless search of a home or office. For the foregoing reasons, we find no error on the part of the trial court in admitting the guns in evidence.

Appellant's second contention is that a police officer acting on unverified hearsay evidence, without further supporting evidence obtained by himself independent of the hearsay, may not conduct an arrest and a search subsequent thereto. We believe this contention is answered in number one; and, therefore, we will not deal with it further.

■ Appellant's third contention is that a gun, holstered and strapped so that it cannot be fired and stored in the glove compartment on the dashboard of an automobile, is not readily accessible and these facts will not sustain a conviction for

carrying concealed a deadly weapon under KRS 435.230. We have previously held that a pistol in an unlocked glove compartment of an automobile is not readily accessible to the driver of the automobile. Therefore, it cannot be construed as a violation of the above statute. See Williams v. Commonwealth, Ky., 261 S.W.2d 807; Elza v. Commonwealth, Ky., 269 S.W.2d 275. Here the Commonwealth contends that the automobile being used by the appellant on this occasion was a Chevrolet Nova; this is a compact car and the glove compartment is much more accessible to the driver than on a standard-size car. We do not believe that we have to get into this aspect of the case. There was a pistol above the driver's head over the sun visor.

Detective Luther Cole testified that, when he approached the automobile, he approached it from the driver's side and slightly to the rear. He stated that from where he was standing he could not see the gun over the sun visor and that the gun was not visible unless one placed one's head down and looked inside the car. Appellant strongly contends that this cannot be construed to be a concealed weapon under these facts. We are of the opinion that from this evidence the jury could reasonably believe that the gun was concealed and readily accessible to one driving the automobile. See Prince v. Commonwealth, Ky., 277 S.W.2d 470 (1955); Collier v. Commonwealth, Ky., 453 S.W.2d 600 (1970). See, also, Avery v. Commonwealth, 233 Ky. 248, 3 S.W.2d 624 (1928), wherein we stated: "Concealed does not mean that it must be so hidden that it can only be discovered by a person making a special investigation to ascertain whether a person has such a weapon."

Appellant's fourth and fifth contentions deal with matters decided by this court under the third contention, and, therefore, will not be further discussed.

Judgment affirmed.

All concur.