(694 P.2d 915)
No. 56,966

STATE OF KANSAS, *Appellee*, v. MICHAEL J. MAYFIELD, *Appellant*.

Opinion filed February 7, 1985.

*Bryce D. Benedict*, of Topeka, for the appellant.

*Nicholas M. St. Peter*, legal intern, *Gene M. Olander*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

FOTH, C.J.: Defendant Michael J. Mayfield was convicted in a court trial of possession of marijuana. He was placed on two years' probation, fined $250.00 but paroled to pay $100.00, and ordered to pay costs and the expenses of his defense. He appeals, claiming the marijuana on which the conviction was based was unlawfully seized in a warrantless search of his apartment.

The seizure took place in the evening of August 22, 1983. During that summer defendant lived in a Topeka apartment building across the hall from Carol Stark. The two had met in the building and briefly socialized on one occasion, but Carol thereafter limited her contact with him because he allegedly made a sexual advance toward her. At about 10:00 p.m. on the night in question, defendant knocked on Carol's door. Not wanting him to know she was at home, Carol did not answer. After the knocking continued for twenty minutes, Carol called the police.

When the two responding officers arrived, they found defendant standing in the hallway near Carol's door. The officers visited

with Carol, learned the details of her complaint, and then asked defendant for identification. Defendant was reluctant to produce identification, and demanded to know what he had done. He and the officers then engaged in a loud discussion about whether he had to give the police any identification. During this discussion, in which defendant was increasingly belligerent, he backed down the hall towards his apartment. Finally, he agreed to get his identification from his apartment.

Mayfield entered his apartment, and the officers followed. Mayfield did not invite the officers in, but they informed him that they were coming in with him. Once inside, Mayfield walked about without heading for any specific location. The apartment was of the efficiency type, with the living area by the front door and a dining area making an "L" to one side. At one point defendant stepped into the dining area, and a short time later one of the officers looked in this part of the apartment. In this area, the officer saw a hash pipe lying next to a stereo receiver. The officer then called more police to the scene. While waiting for their arrival, Mayfield finally produced his identification from the top of a table near the front door.

After the additional officers arrived, the police read defendant the *Miranda* warnings and asked if he would consent to a search of his apartment. He continued to be uncooperative, insisting that the police had no right to be in his apartment. Finally, after being told that if he refused to consent the police would secure his apartment and obtain a search warrant, he permitted a search. The police then searched the apartment and seized the hash pipe, a forceps with residue burned on it, cigarette rolling papers, a plastic "power hitter," a frisbie containing papers and a plastic card, a pipe cleaner, and a spare pipe bowl containing residue. Residue in the hash pipe subsequently tested positive for tetrahydrocannabinol (THC), the active ingredient in marijuana.

The State charged Mayfield with possession of marijuana. The defendant filed a motion to suppress the items seized from his apartment, which by agreement was heard with the trial on the merits. The motion was denied, the defendant was found guilty and sentenced, and this appeal followed.

Although defendant's consent is conceded to be voluntary, it alone is not sufficient to sustain the search and seizure. It was the

product of the officers' entry into the apartment whereby they were put in a position to first observe the hash pipe. If the entry was improper, the items seized in the subsequent search of the defendant's apartment should have been suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407 (1963). If the entry was proper, the later search and seizure must be upheld under the plain view exception. *Texas v. Brown,* 460 U.S. 730, 75 L.Ed.2d 502, 103 S.Ct. 1535 (1983). This exception permits a warrantless seizure when three elements are met: (1) the officer must lawfully make his initial intrusion or be properly in a position from which to view an item; (2) the officer must have probable cause to immediately believe the item is connected with criminal activity; and (3) the police discovery of the item must be inadvertent. *Texas v. Brown,* 460 U.S. 730; *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022 (plurality), *reh. denied* 404 U.S. 874 (1971); *State v. Parker,* 236 Kan. 353, 690 P.2d 1353 (1984); *State v. Galloway,* 232 Kan. 87, 652 P.2d 673 (1982). There is no question but that the officers immediately recognized the incriminating nature of the hash pipe, nor is there any contention that the entry was a subterfuge to look for such evidence. Thus the vital question to be resolved turns on the first element, *i.e.,* whether the initial entry into the defendant's apartment was lawful.

This question in turn depends on whether the officers were justified in requesting defendant's identification and, if so, whether they were justified in following him into the apartment when he went to get it.

The trial court found that the initial confrontation, which included the request for identification, was a "stop and frisk situation" and was lawful. Although the officers did not frisk the defendant, if the stop was proper they could have frisked him for their own protection; their persistent demand for identification amounted to a seizure of him. *Terry v. Ohio,* 392 U.S. 1, 17-19, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968); *State v. Deskins,* 234 Kan. 529, Syl. ¶ 2, 673 P.2d 1174 (1983). "Stop and frisk" seizures are lawful only if an officer, based on specific and articulable facts and inferences therefrom, has a reasonable suspicion that the person stopped is involved in criminal activity. *Terry v. Ohio,* 392 U.S. at 17-21; see *Brown v. Texas,* 443 U.S. 47, 51, 61

L.Ed.2d 357, 99 S.Ct. 2637 (1979). After questioning Carol Stark, and upon finding the defendant near her door, the officers reasonably could have suspected the defendant either had committed a crime (pounding on a neighbor's door for twenty minutes may well be disorderly conduct under K.S.A. 21-4101) or was about to commit a crime. K.S.A. 22-2402(1) permits an officer in such a situation to stop a suspected person and "demand of him his name, address, and an explanation of his actions." The confrontation in the hallway and demand for identification was thus proper under our statute. Under *Terry* it was also a valid seizure of defendant under the Fourth Amendment.

Once it is determined that the defendant was lawfully seized, the question then is whether the officers had the further right to go into his apartment with him. They clearly could have done so if they had arrested him. That was exactly the situation in *Washington v. Chrisman*, 455 U.S. 1, 70 L.Ed.2d 778, 102 S.Ct. 812 (1982). There, an apparently underaged university student was stopped by a campus policeman for carrying a bottle of liquor. When the student offered to go to his room to get his identification the officer went with him. The stop was found to be an arrest, and the court held that the arresting officer's entry into the arrestee's room was lawful because the police officer "had a right to remain literally at [the arrestee's] elbow at all times." 455 U.S. at 6. In so holding the court expressed primary concern for the officer's safety as well as his need to prevent escape. As the court said:

"The absence of an affirmative indication that an arrested person might have a weapon available or might attempt to escape does not diminish the arresting officer's authority to maintain custody over the arrested person. [Citations omitted.] Nor is that authority altered by the nature of the offense for which the arrest was made.

"Every arrest must be presumed to present a risk of danger to the arresting officer. [Citation omitted.] There is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of the potential danger." 455 U.S. at 6-7.

This is the same consideration for the *Terry* justification of a "frisk" of a subject even in the absence of probable cause. Only "unreasonable" searches and seizures are prohibited by the Fourth Amendment. Concern for the officer's safety justifies such a limited intrusion on the subject's expectation of privacy

and is not "unreasonable" even though the person is only suspected of crime.

In the case at bar defendant had not been formally arrested, yet for Fourth Amendment purposes he had been "seized" when asked for his identification. We need not speculate on the situation where a suspect simply refuses to identify himself and walks away. Defendant here at no time *refused* to furnish identification, nor did he break off the interview by returning to his apartment. Thus the continuation of the confrontational or custodial relationship between defendant and the officers was at least with the tacit consent of defendant. Defendant ultimately volunteered to go into his apartment for the elusive identification. At that point the officers were concerned about their safety. They so testified, and their testimony was accepted by the trial court. In our view such concern was at least as justified as the officer's in *Chrisman*. There the arrestee was a college student whose demeanor was apparently polite and courteous. Here, the suspect was hostile, increasingly belligerent, and although he never refused to identify himself, was unresponsive to questions. The officer's natural thought was that if defendant were allowed to enter his apartment alone he might well return with a weapon. As the trial court put it, after the argument with defendant and defendant's display of hostility, "clearly the officer would have been without good sense . . . not to stick to him pretty closely just for his own safety."

Further, defendant's later aimless wandering about the apartment justified, for the same self-protection, the officers' moving from the front door to a place where they could continue to observe his movements and, by chance, espy the incriminating drug paraphernalia.

In summary: The officers were justified in asking defendant for his identification; when he at last volunteered to get it from his apartment they were justified in accompanying him; and being in a place where they had a right to be, they were justified in seizing obvious contraband discovered through inadvertence. The trial court correctly overruled the motion to suppress.

Affirmed.