COMMONWEALTH of
Kentucky, Appellant,

v.

Charles David JOHNSON, Appellee.

and

Charles David JOHNSON,
Cross–Appellant,

v.

COMMONWEALTH of Kentucky,
Cross–Appellee.

Nos. 88–SC–184–DG, 88–SC–425–DG.

Supreme Court of Kentucky.

June 8, 1989.

Rehearing Denied Nov. 9, 1989.

Frederic J. Cowan, Atty. Gen., Elizabeth P. Marshall, Asst. Atty. Gen., Valerie L. Salven, Asst. Atty. Gen., Frankfort, for appellant, cross-appellee.

Rodney McDaniel, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, Anna H. Isaacs, Sadieville, for appellee, cross-appellant.

LAMBERT, Justice.

The primary issue in this case is whether certain evidence used against appellant was lawfully obtained. On two separate occasions, three days apart, appellant was found to be in possession of illegal drugs, drug paraphernalia, and in the first instance, a handgun. The trial court overruled both of appellant's motions to suppress the evidence, but the Court of Appeals reversed holding that the police officer's act of shining a flashlight into a darkened hotel room, and their act of forcing their way into another hotel room, violated Section 10 of the Kentucky Constitution and the Fourth Amendment to the Constitution of the United States. We granted the Commonwealth's motion for discretionary review to consider the issues it presented. We likewise granted appellant's cross-motion for discretionary review to consider his claims of trial error.

### I. Evidence Obtained at the Penny Pincher Motel

At approximately 6:00 a.m. on September 14, 1985, the Erlanger police were summoned to the motel in response to a com-

plaint from a guest of a disturbance. The guest had reported that someone was beating on his door with a baseball bat. Upon the officers' arrival, appellant was found standing in an outside hallway between two motel rooms. One of the police officers knew appellant to be a drug user and perceived him to be under the influence of drugs at that time. During questioning, the police learned that appellant's room was number 165 and observed that the door was slightly ajar. While one officer talked with the appellant and asked for his identification, the other shined a flashlight through the partially open door into the darkened room. Just inside the door on a table top, the officer observed drug paraphernalia and a white powder substance. After this discovery, the officer noticed an opening in the window curtain. As he had done before and without entering the room, he shined his flashlight through the window and observed a handgun under the bed. Appellant was arrested, the police obtained a search warrant, and upon their search, cocaine, drug paraphernalia, and a handgun were found. Subsequently, appellant was convicted of various drug possession offenses and possession of a handgun by a convicted felon.

Prior to trial, appellant moved the court to suppress the evidence. His motion was denied. On appeal, however, the Court of Appeals reversed. It held that the act of shining a flashlight beam into a darkened room amounted to a warrantless search in violation of appellant's constitutional rights.

At the outset we must determine whether the act complained of constitutes a search within contemplation of the Fourth Amendment and Section 10 of the Constitution of Kentucky. From the facts presented the police were entirely within their rights to go upon the motel premises and to the location where appellant was encountered. A disturbance had been reported to them and their assistance had been requested by the management of the motel. Upon seeing appellant in the hallway at or near the location of the reported disturbance and upon discerning that he appeared to be under the influence of drugs,

their attention was naturally drawn to him, and by virtue of his whereabouts, to his room.

■■■ By design, rooms in modern motels are easily accessible and in close proximity to places of public passage. Many such rooms have picture windows with only a curtain to prevent public view. Without diminishing an individual's right to be protected from an unreasonable search of his motel room, *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), we note that when one takes lodging in a motel it is with the certain knowledge that substantial numbers of persons unknown to him will be nearby and in a position to invade his privacy unless caution is exercised to prevent it. As such, what would be sufficient vigilance to preserve one's privacy in a home, apartment or office may be insufficient in a motel room. This view was recognized in *People v. Berutko*, 71 Cal.2d 84, 77 Cal.Rptr. 217, 453 P.2d 721 (1969), as follows:

> Essential to the determination of reasonableness in cases wherein officers obtain probable cause for arrest through their own observation is *a consideration of the degree of privacy which a defendant may reasonably expect in a given enclosure accepted by him, whether or not that enclosure be his residence.* (Emphasis added.)

In those instances when the police have a legitimate reason for their presence on the motel premises, we are without reluctance in holding that one who asserts that his rights have been violated by an unreasonable search accomplished by looking through a motel room window or door must show that he took precautions sufficient to create an objectively reasonable expectation of privacy. Otherwise, that which was seen was in plain view. *Harris v. U.S.*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

■■■ Having concluded that appellant's act of leaving his motel room door and window partially open to public view deprived him of a reasonable expectation of privacy, of what significance then is the

police officer's use of a flashlight to look inside? In *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Supreme Court broadly declared that "... the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection." Likewise, in *U.S. v. Richardson*, 388 F.2d 842 (CA6 1968), the court held that use of ultra-violet light to determine if the defendant had touched a bank bag dusted with fluorescein powder was not a search within the fourth amendment. This court reached a similar result in *Rudolph v. Commonwealth*, Ky., 474 S.W.2d 376 (1971), but our holding was premised on the officer's legitimate concern for his safety as a reason for his use of a flashlight. We are now of the opinion that a determination of whether or not contraband is in plain view should not depend on existing lighting conditions or the time of day. One seeking to maintain his privacy should reasonably expect that persons disposed to look inside a motel room will not hesitate to enhance their visibility by use of a widely available device such as a flashlight. In *Texas v. Brown, supra*, in commenting upon the fact that the officer "bent down at an angle so [he] could see what was inside," the court said:

> The general public could peer into the interior of Brown's automobile from any number of angles; there is no reason Maples should be precluded from observing as an officer what would be entirely visible to him as a private citizen.

In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), in its plurality opinion the court set forth three requirements for a valid plain view seizure. These requirements are: prior justification for the officer's presence, inadvertence of discovery, and immediate apparentness that evidence has been found. Observation of these limitations provides sufficient protection for the public as guaranteed by Section 10 of the Constitution of Kentucky and the Fourth Amendment to the Constitution of the United States. On this issue we reverse the Court of Appeals.

## II. Evidence Obtained at The Ramada Inn

On September 17, 1985, three days after appellant's arrest at the Penny Pincher Motel and following his release on bond, an off duty police officer observed appellant in the parking lot of the Ramada Inn. Upon probable cause, the sufficiency of which is not at issue here, the police obtained a warrant to search appellant's automobile.* Prior to commencement of the search, the officer went to appellant's motel room to inform him of the warrant and give him an opportunity to accompany them to the car and provide the keys.

Upon arrival at appellant's motel room, and consistent with what appears to be his normal practice, the police discovered the door standing slightly open. The officer knocked on the door and appellant, wearing only undershorts and a pair of boots, stepped out into the hallway. When informed of the search warrant for his car, appellant indicated he would provide a key and that he wanted to accompany the officers to observe the search. Attempting to re-enter his room to dress and obtain his keys, appellant discovered that he had locked himself out. As his attire was unsuitable for public activity and he did not have his keys on his person, one of the police officers offered to obtain a key from the motel office. Upon the officer's return with the passkey, appellant entered his room and attempted to slam the door behind him. One of the officers prevented the door from closing and the officers then forcibly entered the room. Once inside, the police discovered drugs and drug paraphernalia.

The Commonwealth argues that the police were entitled to force their way into the motel room to protect their personal safety. We are reminded that just three days earlier appellant had been found in possession of a handgun and the Common-

---

* In addition to appellant's automobile, the police sought a warrant to search his motel room. The district judge to whom the affidavit was presented determined that probable cause was not shown for a search of the room and declined to issue the warrant.

wealth reiterates that appellant had stated he wished to accompany the police during the automobile search. On the theory that appellant would enter his room and return with a gun or other weapon, the Commonwealth argues that *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), authorized the police to maintain observation of appellant while he was inside his room. As such observation could only be accomplished by entering the motel room, the Commonwealth argues, the police were within their rights to force their way inside.

■■■ We need not burden this opinion with a review of the various exceptions to the warrant requirement of the United States and Kentucky Constitutions. It is sufficient to say that we have examined the authorities and are not persuaded that the police are authorized, in anticipation of executing a search warrant upon a person's property in another location, to constantly observe him at a time at which he is not under arrest. If such an intrusion were permitted upon the basis of generalized police safety considerations, the police would be authorized to engage in forced, warrantless searches in a multitude of otherwise prohibited circumstances. *Cf. Shanks v. Commonwealth*, Ky., 504 S.W.2d 709 (1974). A warrantless search upon the basis of a pretextual arrest is invalid. *Amador–Gonzalez v. United States*, 391 F.2d 308 (CA5 1968). It follows with greater logical force that a mere apprehension for personal safety, and the opportunity such provides for pretext, is insufficient to create an exception to the warrant requirement.

■■■ By the views expressed in this opinion, we do not denigrate the legitimacy of police officers' concern for their personal safety. We recognize, however, that preservation of constitutional rights frequently conflicts with an officer's perception of his need to protect himself. This court and other courts have willingly found exceptions to various constitutional provisions to better insure the safety of police

officers. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 9 L.Ed.2d 889 (1968); *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Phillips v. Commonwealth*, Ky., 473 S.W.2d 135 (1971); *Rudolph v. Commonwealth*, Ky., 474 S.W.2d 376 (1971). We are not willing, however, to recognize exceptions so broad as to render meaningless the right secured by the Constitution of Kentucky.

Without expressing any view as to the result which would be reached in this case by application of the Fourth Amendment to the Constitution of the United States and applicable decisions of Federal Courts, we hold that the warrantless, forced entry by the police into appellant's room at the Ramada Inn, violated Section 10 of the Constitution of Kentucky, and the evidence found therein must be suppressed. On this issue we affirm the Court of Appeals.

### III. Issues on Cross–Appeal

■■■ Appellant first contends that the trial court erred to his prejudice by permitting a police officer to testify that when appellant's room was searched, the police wore rubber gloves because they had heard he "... might have AIDS or some other disease." In *Wiggins v. Maryland*, 315 Md. 232, 554 A.2d 356 (1989), the court noted that "... a climate of fear still surrounds the disease," and held

> it is not far-fetched that the jury, observing the (rubber) gloves, thought it better in any event, that the defendant be withdrawn from public circulation and confined in an institution with others of his ilk.

We agree with the Maryland Court that raising the specter of AIDS, without substantial relevance in bringing this to the attention of the jury, may result in unfair prejudice. In this case, however, the trial court's error in the admission of this evidence was harmless. RCr 9.24. Appellant was convicted of possession of cocaine, possession of drug paraphernalia, and possession of a handgun by a convicted felon. The evidence of his guilt was overwhelm-

ing and his substantial rights were not affected.

■ Finally, appellant's claim that he was prejudiced by evidence that his home had been searched by the police on an earlier occasion is without merit for two reasons. First, the absence of any carpentry tools, at appellant's place of dwelling was relevant to rebut his testimony that he worked as a carpenter. Second, defense counsel raised an issue concerning police surveillance of appellant. The Commonwealth was thus entitled to explain that their surveillance resulted in the issuance of a search warrant. Moreover, the fact that no evidence of criminal activity was found at appellant's residence may have been to his advantage. Certainly, we are unprepared to say that he was prejudiced by this testimony.

### Conclusion

For the foregoing reasons and as set forth herein, upon the Commonwealth's appeal, we affirm in part and reverse in part; upon the cross appeal by appellant, we affirm. This cause is remanded to the trial court for further proceedings in conformity herewith.

As to Section I, all concur except COMBS, J., not sitting. As to Section II, LAMBERT, LEIBSON and VANCE, JJ., concur; WINTERSHEIMER, J., dissents by separate opinion in which STEPHENS, C.J., and GANT, J., join; COMBS, J., not sitting. On this issue the Court of Appeals is affirmed by an equally divided Court. As to Section III, all concur except COMBS, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from that part of the majority opinion which affirms the decision of the Court of Appeals in regard to the suppression of evidence obtained from a search of the Ramada Inn hotel room. The trial judge correctly overruled the defendant's motion to suppress evidence obtained in the search.

I specifically and strongly reject any implication from the majority opinion that this search was a pretext. The determination of whether a search is reasonable under the circumstances is predominantly factual and should stay in the hands of the trial judge. A reviewing court should not substitute its findings for those of the trial judge. The trial judge is in the best position to ascertain the facts. *Cf.* CR 52.01.

When a reasonably prudent police officer believes that his safety or that of others is in danger, he may make reasonable search for weapons of a person believed by him to be armed and dangerous regardless of whether he has probable cause to arrest that individual. This is true even though the officer is not absolutely certain that the individual is armed, although he must secure a warrant when practical before making search or arrest. *Phillips v. Commonwealth,* Ky., 473 S.W.2d 135 (1971). When such a search of a person that an officer believes is armed is confined to what is minimally necessary to determine whether the party is armed for the purposes of protecting the officer, the search is reasonable. *Phillips, supra; Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The real dangers with which police officers are confronted in their work on a daily basis cannot be ignored. Here the officers knew that a gun had been found in Johnson's motel room only three days earlier at the Pennypincher in Erlanger. The Fourth Amendment to the United States Constitution does not require a police officer who lacks the precise level of information necessary for probable cause to simply allow a crime to occur or a criminal to escape. *Terry, supra,* recognizes that an intermediate response may be appropriate and that a brief stop of a suspicious individual in order to maintain the status quo momentarily while obtaining more information may be reasonable in the light of the facts known to the officers at the time. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

Johnson was not a less dangerous suspect by the mere fact that he was not under arrest when the officers asked him for the keys to his car. Other state courts have found it reasonable to permit police

officers to protect themselves while they are still investigating a possible crime. *See Commonwealth v. Daniels,* 280 Pa.Super. 278, 421 A.2d 721 (1980); *State v. Mayfield,* 10 Kan.App.2d 175, 694 P.2d 915 (1985). The reasoning of the Pennsylvania and Kansas courts was sensible and correct and properly persuasive when applied to the actions of the police in this case.

The United States Courts of Appeals have recently indicated that a protective search can be appropriate in certain circumstances. *See United States v. Johnson,* 637 F.2d 532 (8th Cir.1980); *United States v. McClinnhan,* 660 F.2d 500 (D.C.Cir. 1982).

The United States Supreme Court has recognized that suspects may injure police and others by virtue of their access to weapons even though they may not be armed. *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The U.S. Supreme Court determined that an interpretation of *Terry, supra,* need not restrict the preventative search to the person of the detained subject. If a suspect is dangerous, he is no less dangerous simply because he is not arrested.

The United States Supreme Court has applied a common sense approach to this dangerous and delicate area of constitutional interpretation. A proper interpretation of Section 10 of the Kentucky Constitution and the Fourth Amendment to the Federal Constitution both provide reasonable protection for police in exercising a protective search. The police entry into Johnson's Ramada Inn room was perfectly reasonable to assure that he did not emerge with gun in hand.

I would reverse the decision of the Court of Appeals and reinstate the judgment of the circuit court.

STEPHENS, C.J., and GANT, J., join in this dissent.