J-S10019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NEIL ARMSTRONG | : | |
| | : | |
| Appellant | : | No. 3315 EDA 2016 |

Appeal from the Judgment of Sentence June 2, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011915-2012

BEFORE: BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 14, 2018**

Appellant, Neil Armstrong, appeals from the judgment of sentence entered on June 2, 2015, following his bench trial conviction for possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(30). We affirm.

The trial court set forth the facts of this case as follows:

On July 12, 2012, at approximately 12:30 a.m., Officer Simon Murray went to [a residence on] East Champlost Avenue in Philadelphia to investigate reported screaming. [The female complainant] ran out of the house and told Officer Murray that Appellant had attacked her. [The complainant] was crying, bruised and bleeding from her mouth. Appellant then came to the doorway of his house, and [the complainant] and Officer Murray went into the house to discuss the incident with Appellant. At no point did Appellant ask Officer Murray to leave or tell him that he did not have permission to remain in the house.

Eventually, [the complainant] told Officer Murray that she wanted to leave the house. Officer Murray escorted her into the

kitchen to collect some of her belongings, including a plastic bag. When [the complainant] opened the bag, Officer Murray smelled marijuana. He told [the complainant] to put the bag down, and then called his supervisors to request a search warrant. Following Officer Murray's observations, two police detectives executed a search warrant of Appellant's home.

In Appellant's bedroom nightstand, the officers found a Commerce Bank Visa debit card in Appellant's name, one .357 [caliber] revolver loaded with six live rounds, one black metal handgun magazine loaded with six .380 rounds, one large blue tinted Ziploc bag containing marijuana, one small Ziploc bag containing marijuana and one small glass jar containing marijuana. In Appellant's bedroom dresser, the officers found a plastic box containing .380 [caliber] ammunition, and one clear plastic sandwich bag containing nine clear bags of marijuana. In the closet in the same bedroom was one small handgun loaded with a magazine containing four rounds. The officers also found various paperwork in Appellant's name in the bedroom and in the downstairs living room. In Appellant's kitchen, the officers recovered a digital scale and five Ziploc bags containing marijuana. They found five large Ziploc bags of marijuana in Appellant's basement, as well as a Pennsylvania vehicle registration in Appellant's name. In total, the officers seized more than seven pounds of marijuana from Appellant's house.

Trial Court Opinion, 6/9/2017, at 2-3 (record citations omitted).

Procedurally, the case progressed as follows:

On July 12, 2012, police arrested and charged Appellant [] with numerous drug-related offenses. Following a [bench] trial on March 10, 2015, [the trial court] found Appellant guilty of [PWID] [m]arijuana. On June 2, 2015, [the trial court] sentenced Appellant to time served to twenty-three months of incarceration followed by two years of probation.

On October 16, 2015, Appellant filed a [] petition [pursuant to the Post Convicted Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546,] which he amended, through counsel, on June 9, 2016. [The trial c]ourt granted reinstatement of Appellant's direct appeal rights on October 18, 2016, and Appellant filed a timely notice of appeal on October 19, 2016. On November 18, 2016, [the trial c]ourt ordered Appellant, pursuant to

Pa.R.A.P. 1925(b), to file [] a [c]oncise [s]tatement of [errors] [c]omplained of on [a]ppeal. On December 8, 2016, Appellant [complied]. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 9, 2017.]

*Id.* at 1-2.

On appeal, Appellant presents the following issues for our review:

1. Did the [trial] court err in denying [A]ppellant's motion to suppress physical evidence as the [] search and seizure was not based on probable [cause] in violation of Article 1 Section 8 of the Pennsylvania Constitution and the 4th and 14th Amendments of the United States Constitution, and the recovery of all physical evidence in question was the fruit of an unlawful arrest?

2. Evidence presented at trial was insufficient as a matter of law to find [Appellant] guilty beyond a reasonable doubt.[1]

Appellant's Brief at 7.

In his first issue presented, Appellant claims that the trial court erred by denying his motion for suppression. *Id.* at 11-13. Appellant argues that neither he nor the complainant gave police verbal or written consent to enter Appellant's residence. *Id.* at 12. He suggests that police could have stayed outside with Appellant and allowed the complainant to "enter the home

_____

[1] Because Appellant does not present any argument on his second issue, he has abandoned and waived it. *See* Pa.R.A.P. 2119(a) (stating argument shall be divided into as many sections as there are questions presented, followed by discussion with citation to relevant legal authority); *see also Commonwealth v. Johnson*, 985 A.2d 915 (Pa. 2009) (explaining appellant waives an issue on appeal where she fails to present the claim with citations to relevant authority or to develop the issue in a meaningful fashion, capable of review). We further note that Appellant's brief barely meets the legal authority requirements on his first issue, as well, providing three boilerplate citations to general suppression law. However, we will review the merits of his first claim.

herself to retrieve her belongings[.]" *Id.* Finally, Appellant argues that there were no exigent circumstances necessitating police entry without a warrant. *Id.* at 12-13. In sum, he claims that everyone involved was outside of the house and no one fled inside, no crimes were being committed when police arrived, and there were no allegations that a weapon was involved or there was destruction of evidence inside the home. *Id.* at 13.

Our standard of review is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–527 (Pa. Super. 2015) (internal brackets and citation omitted).

"A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Smith*, 177 A.3d 915, 920 (Pa.Super., 2017) (citation omitted. "Those exceptions include voluntary consent." *Id.* "The

central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent." *Id.* Although Appellant appears to insist that consent must be verbal or obtained through a signed consent form,[2] Pennsylvania case law holds that the validity of consent is resolved through an examination of the totality of the circumstances, but cannot be met by showing mere acquiescence to police commands. *See Commonwealth v. Daniels*, 421 A.2d 721, 723, (Pa. Super. 1980) (citation omitted). Courts should consider the nature of the on-scene questioning, the subjective mind of the person who consents, his educational background, and the presence or lack of probable cause to arrest or search the subject. *Id.*

Our Court's decision in *Daniels* is factually similar and instructive. In that case, police responded to an anonymous call that a screaming woman was dragged from a vehicle into a residence. When an officer arrived at the residence, he knocked on Daniels' door and asked if everything was all right. Daniels "unlocked the door, did not respond to the policeman's questions, and allowed the policemen to enter [without verbal permission]." *Daniels*, 421 A.2d at 722. The officer followed Daniels through the apartment and saw heroin in plain view. The officer arrested Daniels and seized the

---

[2] Appellant's Brief at 12.

contraband. Prior to trial, Daniels sought suppression of the narcotics based upon lack of consent to enter the premises and the trial court denied relief. In affirming the trial court's ruling, we concluded that the totality of the circumstances showed that Daniels voluntarily consented. We reasoned that the officer did not ask for or demand entry, Daniels opened the door when he saw a uniformed police officer, did not respond to questioning, and allowed the officer to enter the residence without objection. We concluded that Daniels' non-verbal cues constituted valid consent to enter the premise and that police then properly seized evidence inadvertently seen in plain view. *Id.* at 725.

Here, upon review of the evidence presented at the suppression hearing, we agree that suppression was unwarranted because Appellant consented to having the police officer enter his residence. Officer Murray, responding to a telephone call concerning a woman screaming, arrived on the scene to see the complainant coming out of Appellant's residence, bleeding from her mouth. N.T., 1/8/2015, at 7. Officer Murray was in full uniform. *Id.* at 24. Appellant was standing in the doorway of the residence. *Id.* at 8. The officer spoke with both the complainant and Appellant outside of the residence, "to figure out what was going on." *Id.* at 9. Officer Murray testified that Appellant and the complainant let him into the residence. *Id.* at 9. He clarified that no one specifically invited him in, but that he and the complainant "were actually walking in the house and she was saying what was going on and [Officer Murray] was trying to get her to calm down." *Id.*

at 11.  Officer Murray, the complainant, and Appellant went into the living room to continue the discussion.  *Id.* at 12.  Appellant did not ask Officer Murray to leave or otherwise tell him he did not have permission to be inside the residence.  *Id.*  Instead, Appellant stated that there had been a "little disagreement, but] nobody beat [the complainant] up."  *Id.* at 13.  The complainant did not ask police to leave the residence either.  *Id.* at 16; *see also id.* at 17-18 ("We all went in the house. … They walked in ahead of me.  No one said leave, don't come into my house.  They all came in the living room and started explaining what happened.").

It is clear from the uncontradicted testimony that Appellant opened his door to a uniformed officer and permitted the officer to enter his residence to continue discussing the alleged incident.  Appellant did not object to the officer's presence inside and never asked the officer to leave.  Based upon the foregoing, we conclude that Appellant gave non-verbal consent[3] to enter his residence and, thus, a warrant was not required.[4]  As such, it was proper to deny suppression and Appellant's sole preserved appellate issue fails.

---

[3]  In this case, the trial court determined that "Officer Murray legally entered Appellant's home based on a reasonable perception of third-party consent [by the complainant.]"  Trial Court Opinion, 6/9/2017, at 6.  However, we may affirm the trial court's decision on any basis appearing in the record. *See Commonwealth v. Elia*, 83 A.3d 254, 264 (Pa. Super. 2013).

[4]  As Appellant only challenges the initial entry into the residence, we need not examine the subsequent discovery of the marijuana in the kitchen under the plain view/smell doctrine.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/18